## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MIGHTY EARTH, | |
| Plaintiff, | Civil No. 1:25-cv-04138-JDB |
| v. | ORAL ARGUMENT REQUESTED |
| JBS USA FOOD COMPANY AND JBS USA FOOD COMPANY HOLDINGS, | |
| Defendants. | |

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ..........................................................................................................2

LEGAL STANDARD....................................................................................................3

ARGUMENT ................................................................................................................3

I. THIS COURT SHOULD DISMISS RATHER THAN REMAND BECAUSE MIGHTY EARTH LACKS REQUISITE STANDING IN D.C. SUPERIOR COURT. ................................................................................................................3

 A. The D.C. Courts' Enabling Statute Requires The D.C. Courts To Apply Article III's Case Or Controversy Requirement. .......................................3

 B. Dismissal, Rather Than Remand, Is Appropriate. ...................................6

II. THIS COURT HAS DIVERSITY JURISDICTION. ..........................................9

 A. JBS USA Has Established By Preponderance That The Amount In Controversy Based On Disgorgement Alone Well Exceeds $75,000....................10

 B. The Non-Aggregation Principle Does Not Apply To Plaintiff's Demand For Injunctive Relief and Attorneys' Fees. ............................................13

  1. JBS USA's Costs of Complying With Requested Injunctive Relief Exceeds $75,000. .................................................................16

  2. Plaintiff's Request For Attorneys' Fees Exceeds $75,000. ......................17

CONCLUSION.................................................................................................19

## **TABLE OF AUTHORITIES**

**Page**

### Cases

*Aetna U.S. Healthcare, Inc. v. Hoescht Atkiengesellschaft*,
   48 F. Supp. 2d 37 (D.D.C. 1999) ............................................................10

*Allred v. Kellogg Co.*,
   No. 17-cv-1354-AJB-BLM (S.D. Cal. Jan. 9, 2018) ..............................11

*Alston v. Flagstar Bank. F.S.B.*,
   2014 WL 12803918 (D.D.C. Apr. 10, 2014) ............................................4

*\*Animal Legal Def. Fund v. Hormel Foods Corp.*,
   258 A.3d 174 (D.C. 2021) ...................................................................5, 6

*Banks v. Hoffman*,
   346 A.3d 665 (D.C. 2025) ........................................................................5

*Beck v. Test Masters Educ. Servs., Inc.*,
   73 F. Supp. 3d 12 (D.D.C. 2014) ...........................................................17

*Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't*,
   533 F.3d 1183 (10th Cir. 2008) ...............................................................7

*Chem. Toxin Working Grp. Inc. v. Johnson & Johnson*,
   2023 WL 2631492 (D.D.C. Mar. 24, 2023)......................................10, 11

*Clean Label Project Found. v. Garden of Life, LLC*,
   2022 WL 1658812 (D.D.C. May 24, 2022)...............................................8

*Clean Label Project Found. v. Garden of Life, LLC*,
   No. 2020 CA 003753 B (D.C. Super. Ct. Mar. 24, 2023) ........................8

*Cmty. Credit Union Servs., Inc. v. Fed. Express Servs. Corp.*,
   534 A.2d 331 (D.C. 1987) ........................................................................4

*Comm. for GI Rights v. Callaway*,
   518 F.2d 466 (D.C. Cir. 1975)................................................................14

*CW Gov't Travel, Inc. v. United States*,
   46 Fed. Cl. 554 (2000) .............................................................................4

*D.C. v. Walters*,
   319 A.2d 332 (D.C. 1974) ........................................................................6

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006).............................................................................7

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014)..............................................................................9

*Dist. Cablevision Ltd. P'ship v. Bassin*,
828 A.2d 714 (D.C. 2003) ...............................................................17

*Fisher v. Gov't Emps. Ins. Co.*,
762 A.2d 35 (D.C. 2000) ....................................................................4

*In re Folgers Coffee, Mktg. Litig.*,
2021 WL 5106457 (W.D. Mo. Aug. 19, 2021)...................14, 15, 16

*Grayson v. AT & T Corp.*,
15 A.3d 219 (D.C. 2011) ....................................................................5

*Hammer v. United States*,
989 F.3d 1 (D.C. Cir. 2021) .............................................1, 2, 3, 6, 7

*Hoyte v. Yum! Brands, Inc.*,
489 F. Supp. 2d 24 (D.D.C. 2007).....................................................8

*Hussein v. Maait*,
129 F.4th 99 (2d Cir. 2025) ................................................................7

*In re InPhonic, Inc.*,
674 F. Supp. 2d 273 (D.D.C. 2009)..................................................17

*Inst. for Truth in Mktg. v. Total Health Network Corp.*,
321 F. Supp. 3d 76 (D.D.C. 2018) ...................................................14

*Loftus v. Commissioner*,
90 T.C. 845 (1988).............................................................................4

*Mostofi v. Network Cap. Funding Corp.*,
798 F. Supp. 2d 52 (D.D.C. 2011)...................................................10

*Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co., LLC*,
2024 CAB 003999 (D.C. Super. Aug. 7, 2025)..................................8

*Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co., LLC*,
757 F. Supp. 3d 59 (D.D.C. 2024)..................................................5, 8

*Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc.*,
2025 WL 1429172 (D.D.C. May 16, 2025)........................................8

*Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc.*,
    No. 2024-CAB-006253 (D.C. Super. Ct. Nov. 21, 2025) ........................................ 8

*Nat'l Consumers League v. Bimbo Bakeries, USA*,
    46 F. Supp. 3d 64 (D.D.C. 2014) ........................................................... 10, 18

*Nat'l Consumers League v. Flowers Bakeries, LLC*,
    36 F.Supp.3d 26 (D.D.C. 2014) ................................................................. 10

*Nichols v. 300 M St. Dev. Grp.*,
    783 F. Supp. 3d 273 (D.D.C. 2025) ............................................................ 13

*Organic Consumers Ass'n v. Handsome Brook Farm Grp.*
    2, LLC, 222 F. Supp. 3d 74 (D.D.C. 2016) ................................................... 18

*Palmore v. United States*,
    411 U.S. 389 (1973) ................................................................................ 3

*Parker-Williams v. Charles Tini & Assocs., Inc.*,
    53 F. Supp. 3d 149 (D.D.C. 2014) .............................................................. 9

*Pesticides v. Dr Pepper Snapple Grp. Inc.*,
    322 F. Supp. 3d 119 (D.D.C. 2018) ...................................................... 11, 12

*Pesticides v. Dr. Pepper Snapple Grp.*,
    No. 1:17-cv-1431 (D.D.C. Oct. 10, 2017) ................................................... 12

*Rosenboro v. Kim*,
    994 F.2d 13 (D.C. Cir. 1993) .................................................................. 13

*Snyder v. Harris*,
    394 U.S. 332 (1969) .......................................................................... 13, 14

*Speyer v. Barry*,
    588 A.2d 1147 (D.C. 1991) ...................................................................... 4

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................ 3

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) .................................................................. 14

*Toxin Free USA v. J.M. Smucker Co.*,
    507 F. Supp. 3d 40 (D.D.C. 2020) ............................................................ 10

*Travelers United, Inc. v. Hyatt Hotels Corp.*,
    2023-CAB-5095 (D.C. Super. Ct. Oct. 16, 2025) ............................................. 8

iv

*Travelers United, Inc. v. Hyatt Hotels Corp.*,
   761 F. Supp. 3d 97 (D.D.C. 2025) ..................................................................8

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ......................................................................................4

*Williams v. First Gov't Mortg. & Invs. Corp.*,
   225 F.3d 738 (D.C. Cir. 2000) .....................................................................17

*Williams v. Purdue Pharma Co.*,
   297 F. Supp. 2d 171 (D.D.C. 2003) ................................................................8

*Zevalkink v. Brown*,
   102 F.3d 1236 (Fed. Cir. 1996) .....................................................................4

## Rules / Statutes

28 U.S.C. § 1441(a) ...........................................................................................3

28 U.S.C. § 1446(a) .........................................................................................15

28 U.S.C. § 1447(c) ..................................................................................1, 3, 6, 7

28 U.S.C. § 1604 ................................................................................................7

D.C. Consumer Protection Procedures Act ..........................2, 5, 8, 10, 14, 15, 16, 17, 18

*D.C. Code § 11-705(b) ...................................................................................1, 4

*D.C. Code § 1-206.02(a)(4) ..................................................................1, 3, 4, 5, 6, 7, 8

D.C. Code § 28-3905(k)(2)(B) ........................................................................17

## Other Authorities

H.R. Rep. No. 112–10, p. 16 (2011) ...................................................................9

Defendants JBS USA Food Company and JBS USA Food Company Holdings (together "JBS USA") respectfully submit this memorandum of law in opposition to Plaintiff's motion to remand (Dkt. 16) and in support of Defendants' cross motion to dismiss.

## PRELIMINARY STATEMENT

This case should never have been filed. Mighty Earth—an environmental advocacy group with no connection to any injured consumer—admits it suffered no injury and lacks Article III standing. This should end the inquiry. Instead, Mighty Earth attempts a workaround: file in D.C. Superior Court, a forum it believes exempt from constitutional standing requirements, oppose removal, and hope this Court sends the case back there on a technicality, avoiding the proper constitutional scrutiny that would require dismissal. That strategy fails on multiple grounds.

This Court should dismiss rather than remand because the D.C. Superior Court also lacks jurisdiction over this case. By statute, the Superior Court—an Article I court—may hear only "[c]ases and controversies." D.C. Code § 11-705(b). That language incorporates Article III's injury-in-fact requirement, as the D.C. Court of Appeals has long held. And the D.C. Council cannot override this limitation because in enacting the Home Rule Act, Congress expressly prohibited the Council from altering the Superior Court's jurisdiction. Yet in *Animal Legal Defense Fund v. Hormel Foods Corp.*, the D.C. Court of Appeals disregarded these statutory limits imposed by Congress and authorized public interest groups to sue without any injury whatsoever. That decision conflicts with federal law and exceeds the D.C. Courts' Article I jurisdiction as defined by Congress.

Remanding this case would allow the Superior Court to exercise jurisdiction that was prohibited by Congress. This Court should not facilitate this improper exercise of jurisdiction by remanding this case to a forum that lacks jurisdiction—it should dismiss it. The D.C. Circuit made this clear in *Hammer v. United States*, holding that § 1447(c)'s remand requirement must be "read

1

in context" and does not apply when federal law prohibits the transferee court from exercising jurisdiction. 989 F.3d 1, 2 (D.C. Cir. 2021). Here, remand would enable an Article I court to flout congressionally imposed jurisdictional limits and subject JBS USA to litigation in a forum not authorized by Congress to hear the dispute.

Although this Court need not reach the issue, it has diversity jurisdiction. Mighty Earth does not dispute complete diversity, and JBS has established by a preponderance of the evidence that the amount in controversy readily exceeds $75,000—whether measured by disgorgement, injunctive relief, or attorneys' fees.

For these reasons, Mighty Earth's motion to remand should be denied, and this case should be dismissed for lack of jurisdiction.

## **BACKGROUND**

On September 29, 2025, Mighty Earth ("Plaintiff" or "Mighty Earth") filed a complaint in D.C. Superior Court, purportedly on behalf of consumers located in the District of Columbia ("D.C.") alleging that JBS USA violated the D.C. Consumer Protection Procedures Act ("CPPA"). Compl. at. 1-2, ¶¶ 35, 97. JBS USA removed this action to federal court on November 25, 2025 on the basis of diversity jurisdiction. Dkt. 1. On December 3, 2025, this Court ordered that any motion to remand "address, in addition to any other arguments, whether plaintiff has suffered an injury-in-fact, required for Article III standing, as necessary to maintain their suit in federal court."[1] Mighty Earth filed its motion to remand on January 16, 2026. Dkt. 16 ("Remand"). For the reasons set forth below, JBS USA opposes remand and seeks dismissal for lack of jurisdiction.

---

[1] Mighty Earth concedes in its remand motion that it "lacks the Article III standing necessary for federal jurisdiction." Dkt. 16 at 10. JBS USA agrees. Because Mighty Earth's lack of Article III standing requires dismissal, *see* Section I, *infra*, JBS USA cross-moves to dismiss Mighty Earth's Complaint, while reserving the right to assert additional grounds for dismissal on any subsequent motion to dismiss pending the outcome of the Remand.

## LEGAL STANDARD

An action originally filed in state court "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending," when it falls within the federal court's original jurisdiction. 28 U.S.C. § 1441(a).   Although 28 U.S.C. 1447(c) generally requires remand when federal jurisdiction is lacking, federal courts may dismiss removed cases where remand would frustrate federal statutory policy or where the transferee court itself lacks jurisdiction over the claims. *Hammer*, 989 F.3d at 3.

## ARGUMENT

### I.   THIS COURT SHOULD DISMISS RATHER THAN REMAND BECAUSE MIGHTY EARTH LACKS REQUISITE STANDING IN D.C. SUPERIOR COURT.

Mighty Earth admits that it has suffered no actual injury and does not have Article III standing.   Remand at 10; *see* S*pokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").   But it does not follow from this admission that this Court should remand.   Instead, it should dismiss for lack of subject-matter jurisdiction.   Article III's injury-in-fact standing requirement applies not only in federal court, but also in the D.C. Superior Court and D.C. Court of Appeals (collectively, the "D.C. Courts").   The D.C. Council cannot override this requirement because in passing the Home Rule Act, Congress denied the Council the authority to change the D.C. Courts' jurisdiction.   This Court should accordingly dismiss, rather than remand this case to a D.C. Superior Court that would lack jurisdiction.

### A.   The D.C. Courts' Enabling Statute Requires The D.C. Courts To Apply Article III's Case Or Controversy Requirement.

Because Mighty Earth lacks Article III standing, the D.C. Superior Court lacks jurisdiction. Although the D.C. Superior Court is an Article I court, not an Article III court, *see Palmore v.*

*United States*, 411 U.S. 389, 399 (1973) (explaining how Superior Court was created by the "authority granted Congress by Art. I, s 8, cl. 17"), the D.C. Superior Court is constrained by the same Article III standing doctrine because, by statute, the court can hear only "[c]ases and controversies."  D.C. Code § 11-705(b); *see, e.g.*, *Fisher v. Gov't Emps. Ins. Co.*, 762 A.2d 35, 38 n.7 (D.C. 2000) ("Although this court . . . is not bound by 'case or controversy' requirements based on Article III of the Constitution, we are limited by our own governing statute to deciding 'cases and controversies.'").  This statutory "cases and controversies" requirement incorporates "the 'constitutional' requirement of a 'case or controversy,'" including constitutional standing requirements.  *Speyer v. Barry*, 588 A.2d 1147, 1160 (D.C. 1991); *see, e.g.*, *Cmty. Credit Union Servs., Inc. v. Fed. Express Servs. Corp.*, 534 A.2d 331, 333 (D.C. 1987) (D.C. Courts "look to" federal standing jurisprudence).[2]  As a result, in D.C. Superior Court, Mighty Earth must still "show that it has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, that the injury fairly can be traced to the challenged action, and that it is likely to be redressed by a favorable decision."  *Cmty. Credit*, 534 A.2d at 333 (citation modified) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)); *see, e.g.*, *Alston v. Flagstar Bank. F.S.B.*, 2014 WL 12803918, at *2 (D.D.C. Apr. 10, 2014) ("[T]here is simply no material difference between the federal standard of standing and the D.C. standard").

The D.C. Home Rule Act, a federal law which creates the D.C. Council and circumscribes its powers, expressly provides that the D.C. "Council shall have no authority … to … [e]nact any

---

[2]   The D.C. Superior Court is no aberration on this point.  Other Article I and Article IV courts likewise incorporate Article III case-or-controversy requirements.  *See, e.g.*, *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 558 (2000); *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996); *Loftus v. Commissioner*, 90 T.C. 845, 856 (1988).

act, resolution, or rule with respect to any provision of Title 11 (relating to organization and jurisdiction of the District of Columbia courts)." D.C. Code § 1-206.02(a)(4). Because case-or-controversy requirements are a jurisdictional limit, it follows that the D.C. Council has no authority to expand the jurisdiction of the D.C. Superior Court to actions in which the plaintiffs lack Article III standing. *See Banks v. Hoffman*, 346 A.3d 665, 669 (D.C. 2025) ("The Home Rule Act grants the Council broad authority to legislate, so long as it does not . . . fundamentally alter our court system").[3]

The D.C. Court of Appeals recently held that the D.C. Council's 2012 CPPA Amendments authorize public interest organizations to bring CPPA suits on behalf of third parties "without pursuing any independent interest of the organization or its members." *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 183 (D.C. 2021). Citing *Hormel*, this Court has ruled that the CPPA "operates without regard to Article III standing." *Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co., LLC*, 757 F. Supp. 3d 59, 61 (D.D.C. 2024).

However, these are wrongly decided because the CPPA is invalid to the extent that it purports to authorize lawsuits by a plaintiff that lacks Article III standing. In holding that the D.C. Council is free "to remove [] limits on standing," *Hormel* disregarded the statutory limit on the D.C. Courts' jurisdiction and the D.C. Council's powers. 258 A.3d at 181. It declared that "nobody 'questions the D.C. Council's authority to remove [] limits on standing,'" without addressing these statutory limits or the D.C. Court of Appeal's past precedents. *Id.* (citation modified) (quoting *Grayson v. AT & T Corp.*, 15 A.3d 219, 259 (D.C. 2011) (Ruiz, J., concurring

---

[3] The Home Rule Act's legislative history supports this reading. "Congress deliberately chose the words 'organization and jurisdiction [of the District of Columbia courts],' rather than, say, 'rules and procedures,' because it was those big-picture issues that it wanted to prevent the D.C. Council from interfering with." *Banks*, 346 A.3d at 671-72. Article III standing, a core component of jurisdiction, is one such "big-picture" issue.

in part and dissenting in part)).  The majority in *Hormel* did not consider, let alone mention, either the Enabling Statute or the Home Rule Act.  Instead, *Hormel* cited Judge Ruiz's solo *Grayson* opinion, not a majority opinion, as authority for this broad proposition.  Judge Ruiz's opinion, in turn, cited as authority a footnote in *D.C. v. Walters*, 319 A.2d 332 (D.C. 1974), which noted that, in theory, Article III constitutional limits may not bind Article I courts, but still held that D.C. Courts' "jurisdiction [] extends [only] as far as Congress has granted it."  *Id.* at 338 n.13.

*Hormel* also cited examples where *state* courts have held that they are not limited by Article III standing jurisprudence.  *See* 258 A.3d at 181 n.2.  Those cases are inapposite because of D.C.'s unique status as a federal district and because Congress has not enacted legislation limiting state courts' jurisdiction to actual cases or controversies or stripping state legislatures of the power to alter their courts' jurisdiction.  By contrast, Congress did exactly that for D.C. when it passed the Home Rule Act.

### B.    Dismissal, Rather Than Remand, Is Appropriate.

Because Mighty Earth lacks standing both in federal court and the D.C. Courts, this Court should dismiss this case for lack of jurisdiction, rather than remand, because federal law prohibits the Superior Court from exercising jurisdiction, as discussed above.  Although 28 U.S.C. § 1447(c) provides that, once a case is removed, the district court "shall" remand the case if it "lacks subject matter jurisdiction," the D.C. Circuit has emphasized that this statute must be "read [] in its context."  *Hammer*, 989 F.3d at 2.  In *Hammer*, the D.C. Circuit held that the federal officer removal statute and Tucker Act combined "make clear that § 1447(c) does not require the District Court to remand" when only the Court of Federal Claims has subject-matter jurisdiction over the claim.  *Id.* at 3.  In a concurrence, Judge Randolph added that there was no need to remand because "federal law would have required [the D.C. Superior Court] to dismiss."  *Id.* (noting that "even if § 1447(c) required a remand rather than a dismissal," dismissal would be a harmless error because

"federal law would have required [the Superior Court] to dismiss") (Randolph, J., concurring in the judgment).

The same principle applies here. Read in context with the D.C. Home Rule Act, Section 1447(c) does not require remand because Congress enacted strict limits on D.C. Superior Courts' jurisdiction and limited the D.C. Council's power to change the jurisdiction of the D.C. Courts, as explained above. There is no obligation on this Court to remand this case where not only do the D.C. Courts lack jurisdiction, but the D.C. Court of Appeals in *Hormel* went so far as to disregard the statutory limits on the D.C. Courts' and the D.C. Council's powers. Rather than facilitating the D.C. Courts' continued exercise of jurisdiction over cases lacking Article III standing, the better course is for this Court to dismiss this action to ensure that an Article I court does not exceed the jurisdiction granted to it by Congress.

Section 1447(c) presupposes the transferee court can, as a matter of federal law, ***lawfully*** exercise jurisdiction over the remanded case. The statute exists to return cases to sovereign state courts capable of resolving them—not to channel litigation into forums Congress has declared off-limits. That is why, when a foreign state removes to federal court and moves to dismiss based on foreign sovereign immunity (a defense which affects state and federal court jurisdiction equally as a matter of federal law, *see* 28 U.S.C. § 1604), courts grant such motions dismiss, instead of remanding back to state court. *See, e.g.*, *Hussein v. Maait*, 129 F.4th 99, 123 (2d Cir. 2025) (affirming dismissal of removed action against sovereign due to lack of subject matter jurisdiction); *Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1192 (10th Cir. 2008) (Gorsuch, J.) (same). It is also common for federal courts to dismiss removed cases when the plaintiff lacks Article III standing, rather than remand. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 354 (2006) (remanding with instructions to dismiss removed case for lack

of standing, not to remand back to state court); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 29 (D.D.C. 2007) (dismissing removed CPPA case because plaintiff lacked necessary injury-in-fact to establish standing); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 178 (D.D.C. 2003) (same).

Moreover, dismissal, instead of remand, is proper because the D.C. Courts have improperly expanded their jurisdiction, disregarding the Home Rule Act's statutory limits imposed by Congress. The D.C. Superior Court has, in the wake of *Hormel*, repeatedly declined to dismiss remanded cases even when the plaintiff lacks Article III standing.[4] Dismissal is needed because in all likelihood if the case is remanded, the D.C. Courts will continue to improperly exercise jurisdiction in violation of Congress' limitation in the Home Rule Act. Moreover, absent extraordinary review of an issue that does not (and could not) present a circuit split, no Article III court will ever have occasion to correct this expansion of jurisdiction by the D.C. Courts in violation of the limitations created by Congress in the Home Rule Act. As such, this Court is uniquely positioned to address this overreach by the D.C. Council and perpetuated by the D.C. Courts.

---

[4]  *See, e.g.*, *Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc.*, 2025 WL 1429172, at *6, 8 (D.D.C. May 16, 2025) (remanding CPPA action because plaintiff lacked Article III standing); Order Denying Def.'s Mot. to Dismiss, *Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc.*, No. 2024-CAB-006253 (D.C. Super. Ct. Nov. 21, 2025) (continuing to adjudicate action against Defendant RentGrow, Inc.); *Travelers United, Inc. v. Hyatt Hotels Corp.*, 761 F. Supp. 3d 97, 123 (D.D.C. 2025) (remanding CPPA action because plaintiff lacked Article III standing); Order Granting Joint Mot. to Ext. Deadlines, *Travelers United, Inc. v. Hyatt Hotels Corp.*, 2023-CAB-5095 (D.C. Super. Ct. Oct. 16, 2025) (continuing to adjudicate the action after remand); *Gemini Tr.*, 757 F. Supp. 3d at 64-65 (remanding CPPA action because plaintiff lacked Article III standing); Order Denying Def.'s Mot. to Compel Arb., *Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co., LLC*, 2024 CAB 003999 (D.C. Super. Aug. 7, 2025) (continuing to adjudicate the action); *Clean Label Project Found. v. Garden of Life, LLC*, 2022 WL 1658812, at *8-9 (D.D.C. May 24, 2022) (remanding CPPA action because plaintiff lacked Article III standing); Notice of Joint Stipulation of Dismissal, *Clean Label Project Found. v. Garden of Life, LLC*, No. 2020 CA 003753 B (D.C. Super. Ct. Mar. 24, 2023) (continuing to adjudicate the action until parties settled).

## II.    THIS COURT HAS DIVERSITY JURISDICTION.

Although not relevant to this Court's determination whether to dismiss or remand this action, JBS USA addresses Plaintiff's arguments regarding diversity jurisdiction.  This Court has jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000.  Mighty Earth is headquartered in Washington, D.C., and both Defendants are Delaware corporations with their principal place of business in Greeley, Colorado.  Indeed, Mighty Earth does not dispute that complete diversity exists between the parties.  Remand at 1; Dkt. 1 Notice of Removal ("Notice") ¶¶ 9-12.  Thus, the sole question for this Court is whether the amount in controversy exceeds $75,000.  JBS USA has established by a preponderance of the evidence that the amount in controversy well exceeds $75,000, whether through disgorgement, injunctive relief, or attorneys' fees.

Defendants are not required to "prove to a legal certainty that the amount in controversy requirement has been met."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88-89 (2014) (quoting H.R. Rep. No. 112–10, p. 16 (2011)).  Rather, removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold"—that is, if it is *more likely than not* that the threshold is satisfied.  *Id.* at 88.  To make this determination, courts "exercise some degree of common sense."  *Parker-Williams v. Charles Tini & Assocs., Inc.*, 53 F. Supp. 3d 149, 152 (D.D.C. 2014).  Here, JBS USA has submitted multiple declarations establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000.[5]

---

[5]  Ex. A, Riva Suppl. Decl.; *see also* Dkt. 1, Exs. D-E.

**A.      JBS USA Has Established By Preponderance That The Amount In Controversy Based On Disgorgement Alone Well Exceeds $75,000.**

The law in this District is clear that disgorgement claims are integrated and aggregable. *Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40, 46 (D.D.C. 2020) (explaining disgorgement is an "exception to the nonaggregation principle"); *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 32 n.3 (D.D.C. 2014) (profits to be disgorged may be aggregated to meet the amount in controversy requirement); *Nat'l Consumers League v. Bimbo Bakeries, USA*, 46 F. Supp. 3d 64, 72 (D.D.C. 2014) (same); *Mostofi v. Network Cap. Funding Corp.*, 798 F. Supp. 2d 52, 55 (D.D.C. 2011) (explaining "CPPA claims seeking the disgorgement of funds can be aggregated to satisfy the amount-in-controversy requirement."); *Aetna U.S. Healthcare, Inc. v. Hoechst Atkiengesellschaft*, 48 F. Supp. 2d 37, 41 (D.D.C. 1999) (explaining disgorgement claims must be aggregated).  Mighty Earth does not dispute this, arguing only that disgorgement cannot be aggregated with *other* damages and ignoring that disgorgement itself is aggregable.  Remand at 13-14.[6]

"The Court has discretion to make common-sense inferences when determining whether jurisdiction exists."  *Chem. Toxin Working Grp. Inc. v. Johnson & Johnson*, 2023 WL 2631492, at *4 (D.D.C. Mar. 24, 2023) (citation modified).  Here, JBS USA is part of the JBS Group, a conglomerate of JBS subsidiaries and affiliates that comprise the world's largest producer of animal protein, operating on five continents throughout twenty-five countries.  It sells products under dozens of brand names available in major retailers and food service establishments throughout the country, including in D.C.  Notice ¶ 18; Compl. ¶ 88.

---

[6]  Mighty Earth's argument that the different types of relief cannot be aggregated is inapplicable here because each type of relief requested by Plaintiff independently satisfies the amount in controversy.

In addition, the court "can accept logical assumptions such as that consumers in a particular state purchase in proportion to consumers nationwide unless those assumptions prove untrue by a preponderance of the evidence." *Chem. Toxin*, 2023 WL 2631492, at *4. Using a population-based allocation methodology to estimate geographic allocation of sales is a standard, widely-accepted approach when granular point-of-sale data is unavailable. *See*, *e.g.*, *Pesticides v. Dr Pepper Snapple Grp. Inc.,* 322 F. Supp. 3d 119, 121-22 (D.D.C. 2018) (finding that defendant's profits exceeded $75,000 based on population-based allocation methodology); *Chem. Toxin*, 2023 WL 2631492 at *4 (denying remand where defendant estimated D.C. sales by multiplying nationwide sales figures by D.C.'s share of the national population); *see also* Order Denying Plaintiffs' Mot. to Remand, *Allred v. Kellogg Co.*, No. 17-cv-1354-AJB-BLM, at *2-5 (S.D. Cal. Jan. 9, 2018), ECF No. 19 (finding "reasonable" defendant's estimate of California sales figures that took its "nationwide sales figures" and multiplied them by 12.5%, since "California has 12.5% of the nation's population").

This population-based allocation approach is particularly appropriate for an entity like JBS USA which does not sell directly to consumers and thus does not have granular point-of-sale data for consumers in D.C. Because JBS USA does not have information about retail sales of its Animal Protein Products[7] in D.C., it applied a population-based allocation methodology to estimate such sales. In 2024, JBS USA's total retail sales of Animal Protein Products in Washington, D.C. and Baltimore, Maryland were ▮▮▮▮▮▮. Ex. A, Suppl. Riva Decl. ¶ 8. Given that Washington

---

[7]  The Complaint alleges that JBS USA and its affiliated entities constitute the largest producer of animal protein on the planet, conducting business on five continents in at least twenty-five countries. Compl. ¶ 88 (referencing beef, pork and poultry and "dozens of brand names including Swift, Aspen Ridge Natural Angus Beef, Just Bare, Pilgrim's, 1855 Black Angus Beef, 5 Star, Blue Ribbon Beef, Certified Angus Beef, Clear River Farms, Four Star Beef, Gourmet Burger, Swift Black Angus, and many others"). Thus, "Animal Protein Products" includes all animal products identified as manufactured by JBS USA and its affiliates.

D.C. constituted 55% percent of the population of D.C. and Baltimore, Maryland in 2024, JBS USA's estimated retail sales of Animal Protein Products in D.C. in 2024 to be ███████. *Id.* ¶ 10.  This methodology establishes, by a preponderance of the evidence, that retail sales to D.C. consumers readily exceed $75,000.

Attestations setting forth similar allocation methodologies have been found sufficient to establish the amount in controversy, particularly when plaintiff has provided no contradictory evidence.  *See* Decl. of Kelly Stephenson in Supp. of Opp'n to Remand, *Pesticides v. Dr. Pepper Snapple Grp.*, No. 1:17-cv-1431 (D.D.C. Oct. 10, 2017), ECF No. 16 (applying population-based methodology to estimate sales in particular geographic area).   In *Dr. Pepper*, based on this methodology, the court found that defendant satisfied the amount-in-controversy requirement by submitting a declaration stating that "the aggregate sales of the [defendant's] [p]roducts in Washington, DC between May 2014 and May 2017 are estimated to have exceeded $5,300,000" and demonstrating that "the profits on these sales well exceeded $75,000."  322 F. Supp. 3d at 122 (D.D.C. 2018).[8]

In its Remand Motion, Plaintiff claims that JBS USA overstates the amount in controversy by relying on sales instead of profits, and by failing to calculate the portion of total profits "gained from JBS's [allegedly] misleading and false advertising."  Remand at 13.  Both arguments lack merit.   *First*, even when profits are considered, JBS USA easily satisfies the jurisdictional threshold.  Because profit margins in the meat processing industry vary based on product line and protein type, JBS USA applied a conservative 2.5% profit margin to its 2024 retail sales of Animal Protein Products in D.C. to estimate profits from the sale of Animal Protein Products in

---

[8]   This population-based allocation methodology confirms that, contrary to Plaintiff's contention, JBS USA properly allocated retail sales to D.C. consumers.

Washington D.C. to be $█████ for calendar year 2024 alone.[9]  Ex. A, Suppl. Riva Decl. ¶ 12.

Thus, there can be no serious contention that JBS USA's profits, even when limited to profits from

the sale of its Animal Protein Products in D.C. for one calendar year, exceed $75,000.

    *Second*, accepting Plaintiff's claim that only profits attributable to the alleged

misrepresentations should be counted, the amount in controversy still far exceeds $75,000.  The

Complaint alleges that "consumers are willing to pay more for environmentally responsible

products and prefer supporting businesses that prioritize sustainability in their business practices."

Complaint ¶ 82.  It supports this assertion by citing a 2024 PwC survey that found that "43% of

respondents are trying to reduce their impact on climate change by buying what they perceive to

be more sustainable food products."  *Id.*  Applying this 43% figure to JBS USA's profits from

retail sales of Animal Protein Products in D.C. for 2024 alone results in $█████ in profits.  Given

the lack of any contradictory evidence by Mighty Earth, JBS USA has established the amount in

controversy by a preponderance standard.[10]

    **B.**    **The Non-Aggregation Principle Does Not Apply To Plaintiff's Demand For Injunctive Relief and Attorneys' Fees.**

    Under the non-aggregation principle, "the separate and distinct claims of two or more

plaintiffs cannot be aggregated" to satisfy the amount in controversy requirement.  *Snyder v.*

*Harris*, 394 U.S. 332, 335 (1969); *see also Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993)

---

[9]  The Complaint appears to contemplate multiple years of allegations, which would multiply this number.

[10]  Mighty Earth's proposal to withdraw its request for disgorgement in an amended complaint, Remand at 14, is unavailing because "[p]ost-removal [amendments] to the amount in controversy do not divest a federal court of jurisdiction."  *Nichols v. 300 M St. Dev. Grp.*, 783 F. Supp. 3d 273, 274 (D.D.C. 2025).

(emphasizing "multiple plaintiffs").[11]   The Supreme Court has recognized an exception to it in "cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."   *Snyder*, 394 U.S. at 335; *see also Inst. for Truth in Mktg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 91 (D.D.C. 2018) (explaining that "courts in this district routinely apply [the *Snyder* exception] when considering the amount in controversy").

This Court need not reach or resolve the parties' competing arguments regarding the application of the non-aggregation principle to Plaintiff's request for injunctive relief and attorneys' fees.   Disgorgement alone satisfies the amount in controversy requirement, and Mighty Earth does not dispute that disgorgement is aggregable under settled law.   Remand at 12-14.

Still, injunctive relief and attorneys' fees are examples of relief where plaintiffs may have a common and undivided interest such that they can be aggregated for the amount in controversy.

*First*, injunctive relief often requires "systemic change" that will "cost the same whether it was made for just one customer or every customer."   *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).   Courts have found that the non-aggregation principle is inapplicable under such circumstances.   *See id.* at 651-52 (attributing full $30 million cost of systemic changes to each plaintiff's claim where defendant's integrated delivery system made individual compliance impossible); *see also Comm. for GI Rights v. Callaway*, 518 F.2d 466, 473 (D.C. Cir. 1975) (calculating amount in controversy based on total cost of system-wide

---

[11]   This principle is inapplicable here because this action is brought by a *single plaintiff*, Mighty Earth.   *See In re Folgers Coffee, Mktg. Litig.*, 2021 WL 5106457, at *4 (W.D. Mo. Aug. 19, 2021) (declining to apply non-aggregation principle to single-plaintiff CPPA case).   In *Folgers*, the plaintiff was a single individual bringing a case on behalf of the general public under the CPPA. *Id.* at *4.   The federal court refused to apply the non-aggregation principle, noting that the principle "only applies to the separate and distinct claims of *two or more plaintiffs*", and the case against Folgers was brought by a *single plaintiff* seeking a single remedy that benefits all consumers identically.   *Id.* at *3-4 (emphasis in original).

changes without dividing among 145,000 beneficiaries).  Here, JBS USA's expected cost of compliance with the requested injunction—corrective advertising, including changing websites, advertisements, and marketing materials—is indivisible.  It is the same whether Mighty Earth brought this action solely on behalf of itself or on behalf of one or multiple D.C. consumers.  JBS USA would incur the same compliance costs of identifying, removing, and replacing allegedly misleading advertising across all platforms regardless of the number of plaintiffs or beneficiaries. Mighty Earth's attempt to distinguish *Synfuel Technologies* and *Committee for GI Rights* on the basis that they did not involve CPPA claims is meritless.  Remand at 9-10.  Nothing in these cases limits their reasoning to non-CPPA cases.  Although courts in this District have applied the non-aggregation principle to divide the costs of injunctive relief among all potential beneficiaries in CPPA cases, Remand at 5-7, these cases conflict with the Supreme Court's decision in *Snyder* and the D.C. Circuit's decision in *Callaway*.[12]

*Second*, the same reasoning that compels rejection of the non-aggregation principle for injunctive relief applies equally to attorneys' fees.  Because the fee award Mighty Earth seeks would be the same whether it brought this action on its own behalf or purportedly on behalf of D.C. consumers, the non-aggregation principle is inapplicable.  *See In re Folgers Coffee*, 2021 WL 5106457, at *3-4 (declining to divide attorneys' fees among general public in CPPA case where case was commenced by a single plaintiff and "any award of attorneys' fees would benefit Plaintiff and his attorneys" alone).  As the court in *Folgers* recognized, applying the non-aggregation

---

[12]    Mighty Earth also argues that this Court should disregard the arguments about injunctive relief in JBS USA's Notice of Removal because they appeared in a footnote.  Remand at 7-8.  Neither case cited by Mighty Earth stands for the proposition that substantive legal arguments supported by multiple citations cannot be presented in a footnote in a notice of removal.  It is well established that JBS USA is required to provide only a "short and plain statement" of its basis for removal. 28 U.S.C. § 1446(a).  Mighty Earth's form-over-substance objection should be rejected.

principle "would elevate form over substance" because if Mighty Earth had stated it was suing only for itself, the amount in controversy would clearly be satisfied. *Id.* at *4. Merely adding language about benefiting the public should not "alter the fact that (1) Plaintiff is the only party bringing this suit, and (2) the object of the injunctive relief has significant value." *Id.* Moreover, Plaintiff's request for attorneys' fees would solely benefit Mighty Earth and its counsel. No member of the general public would receive any portion of the fees.

1.  JBS USA's Costs of Complying With Requested Injunctive Relief Exceeds $75,000.

The Complaint seeks to "enjoin[] JBS USA's conduct found to be in violation of the CPPA" and "redress in the form of corrective advertising to address consumer misunderstanding about the environmental harms associated with JBS USA's practices." Compl., Prayer for Relief ¶ b. Ms. Richardson, Head of Corporate Communications at JBS USA, submitted a declaration attesting that compliance with Plaintiff's requested injunctive relief would require substantial expenditures. Dkt. 1, Ex. E, Richardson Decl. ¶¶ 3-6. Specifically, Ms. Richardson testifies that conducting the extensive website review and implementing content alterations across JBS USA's nearly 100 unique webpages and thousands of pieces of individual content would cost between $600,000 and $800,000. *Id.* ¶ 5. Additionally, the corrective advertising campaign requested by Plaintiff—which would require development of campaign assets across multiple media platforms and placement for 2-4 months (potentially extending to 6 months)—would cost approximately $12 million based on estimates from JBS USA's current media partner. *Id.* ¶ 6. These figures, provided by an individual with personal knowledge of JBS USA's advertising costs and based on concrete estimates from current service providers, plainly demonstrate that the cost of complying with Plaintiff's requested relief exceeds the jurisdictional minimum. *See id.* ¶¶ 3, 5-6.

16

2.    <u>Plaintiff's Request For Attorneys' Fees Exceeds $75,000.</u>

The Complaint seeks "costs and disbursements, including reasonable attorneys' fees and expert fees."  Compl., Prayer for Relief ¶ c.  The CPPA authorizes an award of reasonable attorneys' fees to a prevailing plaintiff.  D.C. Code § 28-3905(k)(2)(B).  Given the widespread allegations in this case and the substantial fees awarded in comparable CPPA actions, attorneys' fees alone are likely to exceed $75,000 if Mighty Earth were to prevail.

Mighty Earth argues that JBS USA merely "regurgitates fee requests sought in unrelated litigation" and cites "assertions of lead-counsel's hourly billing rates" that are "too speculative." Remand at 4.  This argument fails for two reasons:  *First*, JBS USA provided concrete evidence: a 2017 declaration from Mighty Earth's own counsel, Mr. Kim Richman, stating that he bills at a rate of $700 per hour.  Notice ¶ 22 (citing Ex. F, Richman Decl. ¶ 23).  If anything, it is more likely than not that his rate is *higher* now than it was in 2017.  Thus, Mr. Richman's attorney's fees alone will surpass the jurisdictional threshold after billing just 107.2 hours.  Notice ¶ 22.  Given the expected motion practice and discovery if this case proceeds, it is more likely than not that Mr. Richman will bill more than 107.2 hours.  Tellingly, Mr. Richman offers no alternative figure. Despite frequently litigating these cases, Mr. Richman has never even attempted to estimate his fee or argue he would bill less, instead only arguing JBS USA's analysis is "too speculative." Remand at 4.  *Second*, courts in other CPPA cases regularly award attorneys' fees well in excess of $75,000 when the plaintiff prevails.  *See, e.g., Williams v. First Gov't Mortg. & Invs. Corp.*, 225 F.3d 738, 745-47 (D.C. Cir. 2000) ($199,340); *Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 20 (D.D.C. 2014) ($854,623.90); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289-90 (D.D.C. 2009) ($453,885.31); *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 718 (D.C. 2003) ($425,916.25).  These awards establish that $75,000 in fees is more than likely in CPPA cases.  Accordingly, JBS USA has met the jurisdictional threshold by a preponderance standard.

Relying on *Organic Consumers Ass'n v. Handsome Brook Farm Grp.* 2, LLC, 222 F. Supp. 3d 74, 79 (D.D.C. 2016), Mighty Earth argues in the alternative that "when a private attorney general sues for a CPPA injunction, without damages, attorneys' fees for jurisdictional purposes may be set at $0." Remand at 3. But there, plaintiff sought "only injunctive relief." *Id.* at 76. Here, Mighty Earth seeks more than just injunctive relief; it also seeks disgorgement. Because Plaintiff seeks substantial monetary relief in addition to injunctive relief, *Handsome Brook* is inapposite. Plaintiff's citation to *Bimbo Bakeries* is equally misplaced. Remand at 4. There, the court mused that "it would be troubling that an action should be retained in federal court where satisfaction of the amount in controversy requirement depends [only] upon a lump sum award of attorneys' fees." 46 F. Supp. 3d at 73 (alteration in original). That concern does not arise here, where disgorgement and compliance costs each independently exceeds $75,000.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand should be denied and this action should be dismissed for lack of jurisdiction.  In the alternative, to the extent this Court is inclined to remand this action, we respectfully request that it direct the D.C. Superior Court to dismiss this action for lack of jurisdiction.

DATED:  February 6, 2026                    Respectfully submitted,

                                                        QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:   */s/ Manisha M. Sheth*
      Manisha M. Sheth

      Manisha M. Sheth (*pro hac vice*)
      295 Fifth Avenue
      New York, NY 10016
      (212) 849-7000
      manishasheth@quinnemanuel.com

      Derek L. Shaffer D.C. Bar. No. 478775
      1300 I Street NW, Suite 900
      Washington, DC 20005
      (202) 538-8000
      derekshaffer@quinnemanuel.com

      Alex H. Loomis D.C. Bar. No. MA0049
      111 Huntington Ave, Suite 520
      Boston, MA 02199
      (617) 712-7100
      alexloomis@quinnemanuel.com

      *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2026, a notice of the foregoing pleading was provided via the CM/ECF system to the counsel of record.


DATED:  February 6, 2026.

/s/ *Manisha M. Sheth*          
Manisha M. Sheth
