**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| MIGHTY EARTH, <br><br>        Plaintiff, <br><br>        v. <br><br> JBS USA FOOD COMPANY AND <br> JBS USA FOOD COMPANY HOLDINGS, <br><br>        Defendants. | Civil No. 1:25-cv-04138-JDB |

**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS REMAND MOTION AND IN OPPOSITION TO DEFENDANTS'
CROSS-MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

LEGAL STANDARD .............................................................................................................2

   I.   Remand Standard.........................................................................................................2

   II.   Motion to Dismiss Standard .......................................................................................2

ARGUMENT............................................................................................................................3

   I.   SINCE MIGHTY EARTH DOES NOT ASSERT ARTICLE III STANDING,
   REMAND IS REQUIRED. ..........................................................................................3

      A.   When a Federal Court Lacks Subject Matter Jurisdiction, Remand Is the Default
      Remedy. .....................................................................................................................4

      B.   The Non-Aggregation Principle Applies Here. .........................................................5

        i.   The Costs of Complying with Injunctive Relief Cannot be Aggregated.............6

        ii.   Attorney's Fees May not be Aggregated. ...........................................................7

        iii.   Disgorgement May Not be Aggregated..............................................................9

   II.   DEFENDANTS' MOTION TO DISMISS RESTS ON A FUNDAMENTAL
   MISUNDERSTANDING OF STANDING UNDER THE CPPA AND SHOULD NOT
   BE GRANTED. .............................................................................................................9

      A.   Defendants Rely on an Illogical Reading of the Home Rule Act.........................11

      B.   Defendants Have No Footing in Current, Governing Authority. ...........................12

      C.   Mighty Earth Has Standing in D.C. Superior Court.............................................13

CONCLUSION .......................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Animal Legal Defense Fund v. Hormel*,
  249 F. Supp. 3d 53 (D.D.C. 2017) ................................................................. 10, 11, 13
*Animal Legal Defense Fund v. Hormel*,
  258 A.3d ............................................................................................. 13, 15, 16, 17
*Ballard v. District of Columbia*,
  813 F. Supp. 2d 34 (D.D.C. 2011) ....................................................................... 5
*Beyond Pesticides v. Exxon Mobil Corp.*, No. 20-1815 (TJK),
  2021 U.S. Dist. LEXIS 53032, at *5 n.1 ................................................................ 11
*Boos v. Barry*,
  485 U.S. 312 (1988) ........................................................................................ 13
*Breakman v. AOL LLC*,
  545 F. Supp. 2d 96 (D. D. C. 2008) .............................................................. 8, 10, 12
*Breathe DC v. Juul Labs, Inc.*,
  No. 20-619 (JEB), 2023 WL 4531767 (D.D.C. July 13, 2023) ................................... 9
*Busby v. Cap. One, N.A.*,
  932 F. Supp. 2d 114 (D.D.C. 2013) ...................................................................... 5
*Busby v. Cap. One, N.A.*,
  841 F. Supp. 2d 49 (D.D.C. 2012) ....................................................................... 5
*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987) .......................................................................................... 8
*Clean Label Project Found. v. Now Health Grp., Inc.*,
  No. CV 21-11 (JDB), 2021 WL 2809106 (D.D.C. July 6, 2021) ........................... 6, 10
*Cmty. Credit Union Servs., Inc. v. Fed. Express Servs. Corp.*,
  534 A.2d 331 (D.C. 1987) ................................................................................. 16
*Corp. Accountability Lab v. Hershey's Co.*,
  No. 21-3225 (TFH), 2023 WL 1776591 (D.D.C. Feb. 5, 2023) ............................... 10
*Crawford v. Hoffman-La Roche Ltd.*,
  267 F.3d 760 (8th Cir. 2001) ............................................................................. 10
*Ctr. for Inquiry Inc. v. Walmart, Inc.*,
  283 A.3d 109 (D.C. 2022) ................................................................................. 13
*Davis v. D.C. Dep't of Corr.*,
  No. 25-cv -1895 (JMC), 2025 WL 1743940 (D.D.C. June 24, 2025) ......................... 6
*District of Columbia v. 2626 Naylor Rd.*,
  763 F. Supp. 2d 5 (D.D.C. 2011) ...................................................................... 5, 6
*District of Columbia v. Elevate Credit, Inc.*,
  554 F. Supp. 3d 125 (D.D.C. 2021) ...................................................................... 7
*District of Columbia v. Grp. Ins. Admin.*,
  633 A.2d 2 (D.C. 1993) .................................................................................... 15
*District of Columbia v. Walters*,
  319 A.2d 332 (D.C. 1974) ............................................................................ 14, 15
*Earth Island Inst. v. BlueTriton Brands*,
  583 F. Supp. 3d 105 ........................................................................................... 9

*Earth Island Inst. v. Coca-Cola Co.*,
    321 A.3d 654 (D.C. 2024) ................................................................................................ 13
*Fisher v. Gov't Emps. Ins. Co.*,
    762 A.2d 35 (D.C. 2000) ................................................................................................... 15
*Food & Water Watch, Inc. v. Tyson Foods, Inc.*,
    No. 19-cv-2811, 2020 WL 1065553 (D.D.C. Mar. 5, 2020) .......................................... 8
*FW/PBS v. City of Dallas*,
    493 U.S. 215 (1990) ........................................................................................................... 6
*Gasch v. Hartford Accident & Indem. Co.*,
    491 F.3d 278 (5th Cir. 2007) ............................................................................................ 5
*Hawkeye Bancorporation v. Iowa Coll. Aid Comm'n*,
    360 N.W.2d 798 (Iowa 1985) ......................................................................................... 13
*Hood v. F. Hoffman-La Roche, Ltd.*,
    639 F. Supp. 2d 25 (D.D.C. 2009) ................................................................................... 5
*In re Folgers Coffee*,
    No. 21-2984, 2021 WL 5106457 (W.D. Mo. Aug. 19, 2021) ....................................... 10
*Inst. For Truth in Mktg. v. Total Health Network Corp.*,
    321 F. Supp. 3d 76 (D.D.C. 2018) ................................................................................... 8
*Int'l Rts. Advocs. v. Mars, Inc.*,
    No. 1:24-cv-894-RCL, 2025 WL 819580 (D.D.C. Mar. 13, 2025) ............................... 9
*Int'l Rts. Advocs., Inc. v. Nestle USA, Inc.*,
    No. 25-cv-2603 (BAH), 2026 WL 310027 ................................................. 7, 8, 9, 10
*Kessler v. National Enterprises, Inc.*,
    347 F.3d 1076 (8th Cir. 2003) ....................................................................................... 10
*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................... 7
*Mostofi v. Network Capital Funding Corp.*,
    798 F. Supp. 2d 52 (D.D.C. 2011) ............................................................................. 5, 12
*Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co., LLC*,
    757 F. Supp. 3d 59 (D.D.C. 2024) ..................................................................... 6, 12, 13
*Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc.*,
    *No. 24-3218 (PLF*), 2025 U.S. Dist. LEXIS 94421, at *4-5 (D.D.C. May 16, 2025) .............. 13
*Nat'l Consumers League v. Bimbo Bakeries USA*,
    46 F. Supp. 3d 64 (D.D.C. 2014) ................................................................................... 11
*Nat'l Consumers League v. General Mills, Inc.*,
    680 F. Supp. 2d 132 (D.D.C. 2010) ........................................................................... 7, 11
*Nichols v. 300 M St. Dev. Grp.*,
    783 F. Supp. 3d 273 (D.D.C. 2025) .............................................................................. 7, 8
*Organic Consumers Ass'n v. D'Artagnan, Inc.*, No. 2020 CA 003559 B, 2021 D.C. Super.
    LEXIS 4, *1 (Feb. 1, 2021) ................................................................................................ 5
*Organic Consumers Ass'n v. Handsome Brook Farm Grp.* 2, LLC,
    222 F. Supp. 3d 74 (D.D.C. 2016) ................................................................................. 11
*Organic Consumers Ass'n v. R.C. Bigelow, Inc.*,
    314 F. Supp. 3d 344 (D.D.C. 2018) ................................................................................. 8
*Palmore v. United States*,
    411 U.S. 389 (1973) ......................................................................................................... 14

*Rasay v. Pepperidge Farm, Inc.*,
    No. 22-cv-449 (BAH), 2022 WL 4300061 (D.D.C. Sept. 19, 2022) ..................................... 9
*Republic of Venezuela v. Philip Morris, Inc.*,
    287 F.3d 192 (D.C. Cir. 2002) ..................................................................................... 6, 7
*Rotunda v. Marriott Int'l, Inc.*,
    123 A.3d 980 (D.C. 2015) ................................................................................................ 15
*Royal Canine U.S.A., Inc. v. Wullschleger*,
    604 U.S. 22 (2025) ............................................................................................................ 8
*Speyer v. Barry*,
    588 A.2d 1147 (D.C. 1991) .............................................................................................. 16
*Srour v. Barnes*,
    670 F. Supp. 18 (D.D.C. 1987) ........................................................................................ 11
*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ............................................................................................. 9
*Toghill v. Clarke*,
    877 F.3d 547 (4th Cir. 2017) ........................................................................................... 13
*Toxin Free USA v. J.M. Smucker Co*,
    507 F. Supp. 3d 40 (D.D.C. 2020) ..................................................................................... 8
*Washington Consulting Grp., Inc. v. Raytheon Tech. Servs. Co., LLC*,
    760 F. Supp. 2d 94 (D.D.C. 2011) ..................................................................................... 6
*Woodford v. Yazam Inc.*, No. 22-3665 (BAH),
    2023 U.S. Dist. LEXIS 208032, at *18 (D.D.C. Nov. 21, 2023) ...................................... 7
*Your Girl Friday, LLC v. MGF Holdings, Inc.,* No. 06-0385 (ESH),
    2006 U.S. Dist. LEXIS 20665, at *8 (D.D.C. Apr. 18, 2006) ......................................... 11

**Statutes**

28 U.S.C. § 1441(a) ................................................................................................................. 4, 7
28 U.S.C. § 1447(c) ................................................................................................................. 6, 7
28 U.S.C. § 1447(d) .................................................................................................................... 7
D.C. Code § 1-204.31 ........................................................................................................... 14, 15
D.C. Code § 1-201.01 .................................................................................................................. 4
D.C. Code § 1-201.02 ................................................................................................................ 14
D.C. Code § 11-705(b) .............................................................................................................. 16
D.C. Code § 11-101 ................................................................................................................... 14
D.C. Code § 11-101(2) .............................................................................................................. 14
D.C. Code § 16-705(b) ......................................................................................................... 15, 16
D.C. Code § 28-3905(k)(1)(D) ................................................................................. 12, 13, 16, 17
D.C. Code §§ 28-3901-13 ............................................................................................................ 4

**INTRODUCTION**

On September 29, 2025, Mighty Earth ("Plaintiff" or "Mighty Earth") filed a complaint in D.C. Superior Court on behalf of District of Columbia ("D.C.") consumers seeking to hold JBS USA Food Company and JBS USA Food Company Holdings (collectively, "JBS" or "Defendants") for violating the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901-13. (Complaint ("Compl.") at 1-2, ¶¶ 35, 97.). Plaintiff alleges that "JBS's net zero representations in its marketing and other materials create the expectation from consumers that JBS is committed to achieve net zero emissions throughout its entire value chain by 2040, that this plan is realistic, and that JBS is meeting its emissions goals in the interim." *Id.* at ¶ 43. Plaintiff further asserts that JBS, via representations targeted towards consumers, creates the expectation that JBS is committed to "eliminating deforestation" when, contrary to these representations, "JBS's supply chains are linked to significant deforestation." (*Id.* at ¶¶ 60-61.).

On November 25, 2025, JBS removed this action to federal court. ECF No. 1. On January 16, 2016, Mighty Earth filed its motion to remand ("Remand"). (ECF No. 20.). Now, Defendants in asking this Court to deny remand and dismiss this case, requests that this Court ignores years of precedent, overextend the D.C. Home Rule Act, D.C. Code § 1-201.01–07.71 and deem the CPPA "invalid" to avoid accountability for its wrongdoing. *See generally* Defendants' memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Remand and in Support of Defendants' Cross-Motion to Dismiss ("Def.'s Opp. Mem."); (ECF No. 21.). For the reasons outlined below, Plaintiff's remand motion should be granted and Defendants' motion to dismiss should be denied.

1

## LEGAL STANDARD

### I.    Remand Standard

Pursuant to 28 U.S.C. § 1441(a), a civil action filed in state court may be removed to a United

States District Court only if the case originally could have been brought in federal court. "Courts

in this circuit have construed removal jurisdiction strictly, favoring remand where the propriety of

removal is unclear." *Ballard v. District of Columbia*, 813 F. Supp. 2d 34, 38 (D.D.C. 2011)

(Roberts, J.); *see also Busby v. Cap. One*, *N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012) (Urbina, J.)

("Courts must strictly construe removal statutes. The court must resolve any ambiguities

concerning the propriety of removal in favor of remand." (citations omitted)); *Hood v. F. Hoffman-

La Roche, Ltd.*, 639 F. Supp. 2d 25, 28 (D.D.C. 2009) (Hogan, J.) (citing *Gasch v. Hartford

Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007)). "When the plaintiff makes a motion

to remand, the defendant bears the burden of proving federal jurisdiction." *Busby,* 841 F. Supp. 2d

at 53. "Further, for reasons of federalism and comity, 'any doubts about the existence of subject

matter jurisdiction are to be resolved in favor of remand.'" *Mostofi v. Network Capital Funding

Corp.*, 798 F. Supp. 2d 52, 56 (D.D.C. 2011) (Kennedy, J.) (citing *District of Columbia v. 2626

Naylor Rd.*, 763 F. Supp. 2d 5, 7 (D.D.C. 2011)) (Huvelle, J.) (citing *Hood*, 639 F. Supp. 2d at 28).

### II.    Motion to Dismiss Standard

As an initial point, a "motion to remand for lack of subject matter jurisdiction necessarily

precedes [a] motion to dismiss." *Busby v. Cap. One, N.A.*, 932 F. Supp. 2d 114, 126 (D.D.C. 2013)

(Kollar–Kotelly, J.). On a motion to dismiss under 12(b)(1), "[t]he examination of standing . . . is

not the same as in a case involving a summary judgment motion; the burden of proof is much less

demanding when the standing question is raised in a motion to dismiss." *Organic Consumers Ass'n

v. D'Artagnan, Inc.*, No. 2020 CA 003559 B, 2021 D.C. Super. LEXIS 4, *1 (Feb. 1, 2021) (Puig-

Lugo, J.) (quotations omitted) (denying motion to dismiss CPPA action after determining nonprofit plaintiff had standing).

## **ARGUMENT**

### I.    SINCE MIGHTY EARTH DOES NOT ASSERT ARTICLE III STANDING, REMAND IS REQUIRED.

The issue of remand must be addressed first because, even if JBS could meet the burden of establishing the required amount in controversy to proceed in federal court, that showing would be meaningless if the Court does not have subject matter jurisdiction due to the lack of an Article III injury. *See FW/PBS v. City of Dallas,* 493 U.S. 215, 231 (1990). Once a removed case is determined to lack subject matter jurisdiction, remand, not dismissal, is the expected result under 28 U.S.C. § 1447(c). *See Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co., LLC,* 757 F. Supp. 3d 59, 61 (D.D.C. 2024) (Bates, J.); *see Clean Label Project Found. v. Now Health Grp., Inc.*, No. CV 21-11 (JDB), 2021 WL 2809106, at *9 (D.D.C. July 6, 2021*)* (granting a CPPA public-interest plaintiff's motion for remand due to lack of subject matter jurisdiction and denying motion to dismiss as moot); *see Republic of Venezuela v. Philip Morris, Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) ("When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case."); *see* 28 U.S.C. § 1447(c) ("If at any time before final judgement appears that ***the district court lacks subject matter jurisdiction, the case shall be remanded.***") (emphasis added); *see Davis v. D.C. Dep't of Corr.*, No. 25-cv -1895 (JMC), 2025 WL 1743940, at *2 (D.D.C. June 24, 2025) (Cobb, J.); *see also Washington Consulting Grp., Inc. v. Raytheon Tech. Servs. Co., LLC*, 760 F. Supp. 2d 94, 99 (D.D.C. 2011) (Bates, J.) (citations omitted).

### A. When a Federal Court Lacks Subject Matter Jurisdiction, Remand Is the Default Remedy.

To reiterate, Plaintiff does not have Article III standing because "Mighty Earth is alleging no injury to its own interests and is bringing suit on the general public's behalf under the statutory standing of D.C. Code § 283905(k)(1)(D)." (Remand at 16.). Importantly, "D.C.'s Council intended for section (k)(1)(D) standing to go 'beyond what would be afforded in a federal case under a narrow reading of prior federal court decisions on federal standing.'" *Id*. at 17 (citing Consumer Protection Act of 2012, Report on Bill 19-0581, at 4 (Nov. 28, 2012). In sum, whereas Article III standing requires showing an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted), the CPPA has different requirements for public interest organizational standing in D.C. Superior Court. Plaintiff does not meet the former requirements but does meet the latter as explained *supra* § C. *See Woodford v. Yazam Inc.*, No. 22-3665 (BAH), 2023 U.S. Dist. LEXIS 208032, at *18 (D.D.C. Nov. 21, 2023) (Howell, J.) (dismissing amended complaint because the "plaintiff [could not] meet the irreducible constitutional minimum of standing by alleging merely that defendant violated the C[P]PA . . . without also alleging a [resulting] concrete injury" (cleaned up)).

Because Mighty Earth does not have Article III standing—which Defendants concur with (*see* Def.'s Opp. Mem. at 1, 3)—this case ***could never have been brought*** in federal court and must be remanded. In other words, remand is necessary because "[r]emoval is proper only if the case could have been brought in federal court to begin with." *Nichols v. 300 M St. Dev. Grp*., 783 F. Supp. 3d 273, 275 (D.D.C. 2025) (McFadden, J) (citing 28 U.S.C. § 1441(a)); *see also District of Columbia v. Elevate Credit, Inc.*, 554 F. Supp. 3d 125, 134 (D.D.C. 2021) (Sullivan, J.); *Philip Morris Inc.*, 287 F.3d at 196. "When it appears that a district court lacks subject matter jurisdiction over a case

4

that has been removed from a state court, the district court *must remand* the case, and the court's

order remanding the case to the state court whence it came 'is not reviewable on appeal or

otherwise.'" *Int'l Rts. Advocs., Inc. v. Nestle USA, Inc.*, No. 25-cv-2603 (BAH), 2026 WL 310027,

at \*2 (quoting *Philip Morris Inc.*, 287 F.3d at 196) (Howell, J.) (citing 28 U.S.C. § 1447(c) and

quoting *id*. § 1447(d)) (emphasis added); *see also Gemini*, 757 F. Supp. 3d at61 ("The removal

was therefore only proper if, among other things, NACA has Article III standing.") (citing *Nat'l*

*Consumers League v. General Mills, Inc.*, 680 F. Supp. 2d 132, 136 (D.D.C. 2010) (Tulumello,

J.)). *As such, Plaintiff does not believe it is necessary to address the issues of diversity*

*jurisdiction—this case should be remanded based on the lack of Article III standing alone.*

However, in the case that the court wishes to address diversity jurisdiction, Plaintiff maintains the

arguments advanced in its Motion for Remand, contends that it may amend the complaint to

remove the disgorgement request,[1] and reiterates that the non-aggregation principle applies here.

### B.      The Non-Aggregation Principle Applies Here.

The district "routinely appl[ies] [the non-aggregation] rule when considering the amount

in controversy in cases that seek injunctive relief and, like this one, are brought 'on behalf of . . .

the general public[.]'" *Int'l Rts. Advocs.,* 2026 WL 310027, at \*3 (citing *Inst. For Truth in Mktg.*

*v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 91 (D.D.C. 2018) (Jackson, J.) (alterations in

original). D.C. courts "have consistently held that defendants removing DCCPPA actions '*cannot*

rely on the total cost of compliance with the plaintiff's requested injunction to establish the

amount-in-controversy' requirement of § 1332(a).'" *Toxin Free USA v. J.M. Smucker Co.*, 507 F.

---

[1] Plaintiff, as master of the complaint, *see Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398-99 (1987), reserves the right to amend the complaint to remove the request for disgorgement of profit. Amending a form of relief, such as disgorgement, is analogous to removing a claim, such as was the case in *Royal Canin U.S.A., Inc. v. Wullschleger*, where the court found that "federal jurisdiction—or its absence—follows from the amended complaint." 604 U.S. 22, 38 (2025). JBS's citation to *Nichols v. 300 M St. Dev. Grp.*, 783 F. Supp. 3d 273 (D.D.C. 2025) (*see* Def.'s Opp. Mem. at fn. 10) is irrelevant because *Nichols* concerned a CAFA-related amendment and this case is not a class action.

Supp. 3d 40, 45 (D.D.C. 2020) (Friedrich, J.), (citing *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 350 (D.D.C. 2018) (Walton, J.)) (emphasis added). The true amount considered is the "cost of the injunction . . . divided pro rata among District of Columbia consumers." *Id.* at 46 (quoting *Food & Water Watch, Inc. v. Tyson Foods, Inc.*, No. 19-cv-2811, 2020 WL 1065553, at *5 (D.D.C. Mar. 5, 2020) (Mehta, J.) (citing *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 105-06 (D. D. C. 2008) (Bates, J.). While the cost of complying with an injunction or the value of the right that the plaintiff seeks to enforce or protect may be an appropriate avenue to seek the amount in controversy, neither may be "aggregated across multiple plaintiffs and must instead be allocated to each plaintiff on a *pro rata* basis." *Int'l Rts Advocs.*, 2026 WL 310027, at *3 (quoting *Rasay v. Pepperidge Farm, Inc.,* No. 22-cv-449 (BAH), 2022 WL 4300061, at *7 (D.D.C. Sept. 19, 2022) (Howell, J.)).

      i.        ***The Costs of Complying with Injunctive Relief Cannot be Aggregated.***

To make the expected cost of injunction appear indivisible, Defendant argues that the requested relief would require a "systemic change" that would cost the same whether it applied to one consumer or all consumers. (Def.'s Opp. Mem. at 14 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006)). But as explained above, even if the amount in controversy is measured by the cost of complying with an injunction, that cost ***must still be divided*** on a pro rata basis among plaintiffs. *Int'l Rts. Advocs.*, 2026 WL 310027 at *3. The Defendant's reliance on *Synfuel* does not change that result. In fact, although the Seventh Circuit stated that the proper test is the cost to each defendant of an injunction benefiting a single plaintiff—so as not to violate the rule against aggregation—it ultimately relied on the company's total cost of compliance to find jurisdiction. 463 F.3d at 652.

This District does not apply such a carveout; instead, it looks towards the amount to enforce or comply "*divided by* the number of members of the public on whose behalf Plaintiff brings the action." *Breathe DC v. Juul Labs, Inc.*, No. 20-619 (JEB), 2023 WL 4531767, at *10 (D.D.C. July 13, 2023) (Boasberg, J.) (citing *Inst. For Truth in Mktg.,* 321 F. Supp. 3d at91; *Earth Island Inst. v. BlueTriton Brands*, 583 F. Supp. 3d 105,110)); *see also Int'l Rts. Advocs. v. Mars, Inc.*, No. 1:24-cv-894-RCL, 2025 WL 819580, at *2 (D.D.C. Mar. 13, 2025) (Lamberth, J.) (holding that removal was improper in a matter where the requested injunctive relief was that defendants remediate their allegedly misleading public statements regarding child and forced labor); *Corp. Accountability Lab v. Hershey's Co.*, No. 21-3225 (TFH), 2023 WL 1776591, at *1 (D.D.C. Feb. 5, 2023) (Hogan, J.) (holding that removal was improper in part because the injunctive relief the plaintiff sought—a wholesale change to Hershey's business practices—is a "common and undivided interest" with respect to the injunctions beneficiaries); *Clean Label Project Found.*, 2021 WL 2809106, at *3-4.

### ii.    *Attorney's Fees May not be Aggregated.*

JBS further asserts the non-aggregation principle does not apply to attorneys' fees citing the Eighth Circuit case *in re Folgers Coffee,* No. 21-2984, 2021 WL 5106457 (W.D. Mo. Aug. 19, 2021), which ***explicitly outlined it need not*** follow District of D.C. law. *Id.* at *2. The court applied Eighth Circuit law inapplicable to the case at hand. *Id*. Even within the Eighth Circuit, this case is an outlier, other cases finding "fees 'cannot be aggregated to meet the amount-in-controversy requirement' and must be determined on a pro rata basis." *Kessler v. National Enterprises, Inc.*, 347 F.3d 1076, 1080 (8th Cir. 2003) (citing *Crawford v. Hoffman-La Roche Ltd.*, 267 F.3d 760, 767 (8th Cir. 2001).

First, "attorney[] s['] fees must be apportioned such that only the fees properly attributable to the plaintiff herself are considered as part of the amount in controversy," *Int'l Rs. Advoc*s., 2026 WL 310027, at \*3 (citing *Rasay*, 2022 WL 43000061, at \*6-7). The District has **extensive** precedent applying this non-aggregation principle to attorneys' fees. *See Breakman*, 545 F. Supp. 2d at 107 (DCCPPA case finding "the non-aggregation principle logically should extend to claims of attorneys' fees . . . ."); *Hormel,* 249 F. Supp. 3d 53, 62 (D.D.C. 2017) (Kollar-Kotelly, J.) ("considering the total amount of attorneys' fees in a DCCPPA case brought on behalf of the general public would not comport with the non-aggregation principle . . . finds considerable support in a number of district court opinions from this Circuit."); *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 73 (D.D.C. 2014) (Lamberth, J.) (rejecting the aggregation of attorneys' fees and including them only on a pro rata basis);*General Mills, Inc.*, 680 F. Supp. 2d at 141 ("like aggregation of damages, aggregation of attorneys' fees is not appropriate in a CPPA case.");; *Srour v. Barnes*, 670 F. Supp. 18, 22 (D.D.C. 1987) (Gasch, J.) ("as a policy matter, allowing attorney fees to constitute the matter in controversy would hinge federal jurisdiction on the fee schedules of lawyers instead of the weight of the substantive issue before the court."); *Nat'l Org. For Women v. Mut. of Omaha Ins. Co.*, 612 F. Supp. 100, 109 (D.D.C. 1985) (Flannery, J.) ("attorneys' fees cannot be aggregated for determining the jurisdictional amount.").

Second, in the alternative, when a private attorney general sues for a CPPA injunction, without damages, attorneys' fees for jurisdictional purposes may be set at $0. *Organic Consumers Ass'n v. Handsome Brook Farm Grp.* 2, LLC, 222 F. Supp. 3d 74, 78-79 (D.D.C. 2016) (Cooper, J.) (quoting *Bimbo Bakeries*, 46 F. Supp. 3d at 73). Third, as previously discussed in Plaintiff's remand motion (*see* Remand at 10), assertions of lead-counsel's hourly billing rates are too

8

speculative to meet the amount in controversy requirement. *See, e.g., Beyond Pesticides v. Exxon Mobil Corp.*, No. 20-1815 (TJK), 2021 U.S. Dist. LEXIS 53032, at \*5 n.1 ("Even if the non-aggregation principle did not apply, Exxon Mobil's bald claim that, at lead counsel's $700-an-hour rate, 'the amount in controversy will exceed $75,000 so long as [lead counsel] alone bills just 110 hours to this complex litigation,' is too speculative to meet its burden.") (internal citations omitted); *Animal Legal Def. Fund,* 249 F. Supp. 3d at 63; *Bimbo Bakeries*, 46 F. Supp. 3d at 74; *Your Girl Friday, LLC v. MGF Holdings, Inc.,* No. 06-0385 (ESH), 2006 U.S. Dist. LEXIS 20665, at \*8 (D.D.C. Apr. 18, 2006) (Huvelle, J.) ("[D]efendant's conjecture regarding the possible amount of fees is inadequate to support an assertion of diversity jurisdiction in this case . . ..").

### iii.      *Disgorgement May Not be Aggregated.*

Disgorgement[2] relief may not be aggregated with other damages claims for purposes of establishing sufficient amount-in-controversy for federal jurisdiction. *See Breakman*, 545 F. Supp. 2d at 105 ("[C]ase law . . .  establishes clearly that actual and statutory damages should *not* be aggregated in representative actions [such as CPPA cases]."); *see also Mostofi,* 798 F. Supp. 2d at 56 (holding that a plaintiff's putative mass disgorgement claim could not be combined with his individual CPPA claims to satisfy the jurisdictional amount).

## II.      DEFENDANTS' MOTION TO DISMISS RESTS ON A FUNDAMENTAL MISUNDERSTANDING OF STANDING UNDER THE CPPA AND SHOULD NOT BE GRANTED.

Defendants' entire argument for why this case should be dismissed hinges on the idea that "[b]ecause Mighty Earth lacks Article III standing, the D.C. Superior Court lacks jurisdiction."

---

[2] In *Gemini*, the defendant sought jurisdictional discovery to support its standing theory. 757 F. Supp. 3d at 64. The court denied that request, explaining that discovery is inappropriate where the removing party is speculating rather than identifying specific, plausibly discoverable facts that would alter the jurisdictional analysis. *Id.* Accordingly, because JBS's disgorgement theory relies on revised calculations and new assumptions submitted only after remand was sought, JBS has failed to carry its burden of establishing the amount in controversy by a preponderance of the evidence. Any remaining uncertainty must be resolved in favor of remand.

(Def.'s Opp. Mem. at 3-4.) This is incorrect because the CPPA confers standing upon public interest organizations bringing suit on behalf of consumers. D.C. Code § 28-3905(k)(1)(D). To bypass this unambiguous statutory text, Defendants attempt to argue that the CPPA is "invalid to the extent that it purports to authorize lawsuits by a plaintiff that lacks Article III standing." (Def.'s Opp. Mem. at 5.) But as Defendants themselves acknowledge, the D.C. Superior Court "is an Article I Court, not an Article III court." *Id.* As such, the D.C. Superior Court is not constrained by Article III standing doctrine. *Id.*

The text of the CPPA cannot be any clearer. As solidified in *Hormel*, the CPPA confers standing upon "public interest organization[s]" bringing suit "on behalf of the interests of a consumer or a class of consumers," so long as they have a "sufficient nexus" to "adequately represent those interests." D.C. Code § 28-3905(k)(1)(D). This addition to the CPPA, added in 2012, "conveys a clear legislative intent to modify Article III's strictures with a statutory test governing public interest organizations' standing to bring a CPPA claim." *Hormel*, 258 A.3d at 179. This has been the well-decided law of this district for **years.** *Id.; see e.g., Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc., No. 24-3218 (PLF*), 2025 U.S. Dist. LEXIS 94421, at *4-5 (D.D.C. May 16, 2025) (Friedman, J.); *see also Gemini,* 757 F. Supp. 3d at 61; *Earth Island Inst. v. Coca-Cola Co.*, 321 A.3d 654, 662 (D.C. 2024); *Ctr. for Inquiry Inc. v. Walmart, Inc.*, 283 A.3d 109, 114-15 (D.C. 2022*)*. Defendants, however, seek to paint *Hormel* as incorrectly decided for "disregard[ing] the statutory limit on the D.C. Courts' jurisdiction and the D.C. Council's powers." Def. Opp. Mem. at 5.[3] But as Defendants acknowledge, *see id*. at 6, *Hormel* supported its stance

---

[3] Defendants are also seemingly asking this Court to override the text of the CPPA, a state law that gives standing to Plaintiff here under D.C. Code § 28-3905(k)(1)(D). But "federal courts are *without* power to adopt a narrowing construction of a state statute unless such a construction is *reasonable and readily apparent.*" *Toghill v. Clarke*, 877 F.3d 547, 556 (4th Cir. 2017) (citing *Boos v. Barry*, 485 U.S. 312, 330-31 (1988)). Further, "federal courts must be careful not to encroach upon the domain of a state legislature by rewriting a law to conform it to constitutional requirements." *Id*. (citation omitted).

that the D.C. Council can "modify Article III standing requirements with a statutory test" regarding suits bought under D.C. Code 28-3905(k)(1)(D) (such as this one) by citing case law that explains that "[u]nlike the federal courts, state courts are not bound by constitutional strictures on standing. With state courts, standing is a self-imposed rule of restraint." 258 A.3d at 181 n.2, 185 (quoting *Hawkeye Bancorporation v. Iowa Coll. Aid Comm'n*, 360 N.W.2d 798, 802 (Iowa 1985)). Defendants wave these points of authority off as "inapposite because of D.C.'s unique status as a federal district" (Def. Opp. Me. at 6), but as explained below, Defendants' rationale hinges on irrelevant case law and an overambitious reading of the Home Rule Act.

A.        **Defendants Rely on an Illogical Reading of the Home Rule Act.**

Defendants allege that the Home Rule Act—an act intended to grant D.C. residents greater power in self-governance[4]—somehow limits the power of D.C. courts. Defendants argue that, in passing the Home Rule Act, Congress "enacted legislation limiting state courts' jurisdiction to actual cases or controversies or stripping state legislatures of the power to alter their courts' jurisdiction." (Def.'s Opp. Mem. at 5.). Nothing in the Home Rule Act supports this sweeping proposition.

Defendants rely on a singular line in the D.C. Home Rule Act stating that the D.C. Council lacks authority to "change the D.C. Courts' jurisdiction." (*Id.* at 3-4.). That text has no bearing on *Hormel* or on the established interpretation of CPPA standing. Allowing public interest organizations to bring suit pursuant to the CPPA ***does not change*** the organization or jurisdiction of D.C. courts ***because D.C. courts are Article I courts that have never been bound by Article III standing restrictions.*** *See Palmore v. United States*, 411 U.S. 389, 398 (1973) citing D.C. Code § 11-101(2) ("[T]he Superior Court of the District of Columbia and the District of Columbia Court

---

[4] *See* D.C. Code § 1-201.02.

11

of Appeals, the courts being expressly established pursuant to article I of the Constitution.'"); *see also District of Columbia v. Walters,* 319 A.2d 332, 338 n.13 (D.C. 1974) ("In [*Palmore*, 411 U.S. 389] the Supreme Court recently affirmed the view that the courts of local jurisdiction of the District of Columbia, established by Congress pursuant to Article I, are not bound by the requirements of Article III."). In other words, the ***"District of Columbia's local courts, 'established by Congress pursuant to Article I, are not [constitutionally] bound by the requirements of Article III.'"*** *Hormel*, 258 A.3d at 181 (emphasis added) (citing *Walters*, 319 A.2d at 338 n.13, *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 987 (D.C. 2015), and *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 12 (D.C. 1993)).

Furthermore, the text of the Home Rule Act shows that Congress intended to keep Article III matters separate from Superior Court and explicitly states that D.C. courts have jurisdiction over matters granted to them by other laws, such as the CPPA. This text states:

> **The judicial power of the District is vested in the District of Columbia Court of Appeals and the Superior Court of the District of Columbia. The Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District and of any criminal case under any law applicable exclusively to the District. The Superior Court has no jurisdiction over any civil or criminal matter over which a United States court has exclusive jurisdiction pursuant to an Act of Congress.** The Court of Appeals has jurisdiction of appeals from the Superior Court and, to the extent provided by law, to review orders and decisions of the Mayor, the Council, or any agency of the District. **The District of Columbia courts shall also have jurisdiction over any other matters granted to the District of Columbia courts by other provisions of law.**

D.C. Code § 1-204.31 (emphasis added). Since 28-3905(k)(2), states that "[a]ny claim under this chapter ***shall*** be brought in the Superior Court of the District of Columbia" the Home Rule Act supports the conclusion that the Superior Court has jurisdiction over CPPA claims.

## B. Defendants Have No Footing in Current, Governing Authority.

In making their motion to dismiss, Defendants rely on a handful of cases spanning 1982 to 2000, a singular unpublished decision from 2014, and an inapposite provision of the D.C. Code to

argue that the D.C. Superior Court is "constrained by [] Article III standing." (Def.'s Opp. Mem. at 4.).

In support of their argument that "the D.C. Superior Court is constrained by the [] Article III standing doctrine" (*id*.), Defendants rely on a footnote in *Fisher v. Gov't Emps. Ins. Co.*, 762 A.2d 35, 38 n.7 (D.C. 2000) ("*Fisher*"). To the contrary, *Fisher* expressly states that "this court … is not bound by 'case or controversy'" limitations. *Id*. Moreover, the *Fisher* footnote cites D.C. Code § 16-705(b)—a provision addressing jury trials, not standing, and one that does not even contain the phrase "case or controversy." *Id.* Hence, Defendants' reliance on this citation is misplaced. The only D.C. Code provision that includes the phrase "[c]ases and controversies," D.C. Code § 11-705(b), merely provides that "[c]ases and controversies" shall be heard and determined by divisions of the court. Nothing in that language even suggests that D.C. courts may hear only those matters that satisfy federal standing requirements—Defendants' reading inserts constraints that the statute does not impose. At most, the other cases Defendants cite observe that D.C. courts ***may look to*** federal standing jurisprudence for guidance—***none holds that D.C. courts are bound by Article III*** or otherwise constrained by federal standing doctrine. (Def.'s Opp. Mem. at 4 (citing to *Speyer v. Barry*, 588 A.2d 1147, 1160 (D.C. 1991) (stating that D.C. Courts "***look to***" federal standing jurisprudence) and *Cmty. Credit Union Servs., Inc. v. Fed. Express Servs. Corp.*, 534 A.2d 331, 333 (D.C. 1987) (stating that "[a]lthough this court is not governed by standing requirements under article III of the Constitution, we ***look to*** federal jurisprudence") (emphasis added to both).) The distinction is dispositive—and fatal to Defendants' argument.

### C.        Mighty Earth Has Standing in D.C. Superior Court.

The *Hormel* court ruled that, to have standing under § 28-3905(k)(1)(D), the organization must "check three boxes: (1) it must be a public interest organization, (2) it must identify 'a consumer or a class of consumers' that could bring suit in their own right, and (3) it must have a

'sufficient nexus' to those consumers' interests 'to adequately' represent them." *Hormel* 258 A.3d at 185 (citations omitted). Mighty Earth checks all three of these requirements. First, Mighty Earth is a "non-profit public interest organization dedicated to protecting the environment, animals, and consumers." (Compl. at ¶ 27.). Second, Mighty Earth has established that it is bringing this action on behalf of "District of Columbia consumers." (*Id.* at ¶¶ 35, 97.). The third "nexus" requirement "functions to ensure that an 'organization has a sufficient stake in the action' to pursue it 'with the requisite zeal and concreteness.'" *Hormel* 258 A.3d at 186-87. Mighty Earth also meets this requirement, as "no [one has] questioned its aptitude or zeal in prosecuting" its CPPA suit (*Id.* at 187.), and Mighty Earth achieves its goal of protecting nature and the climate "through consumer advocacy campaigns seeking transparency from corporations and proper disclosure of environmental impact to consumers." (Compl. at ¶ 90.). Thus, the § 28-3905(k)(1)(D) standing requirements are met.

## CONCLUSION

For the reasons set forth above, this motion to dismiss should be denied and this case should be remanded to D.C. Superior Court.

DATED: February 20, 2026                              Respectfully submitted,


                                                      /s/ Kim E. Richman
                                                      Kim E. Richman
                                                      **RICHMAN LAW & POLICY**
                                                      (D.C. Bar No. 1022978)
                                                      1 Bridge Street, Suite 83
                                                      Irvington, NY 10533
                                                      T: (914) 693-2018
                                                      krichman@richmanlawpolicy.com

                                                      *Attorney for Plaintiff Mighty Earth*

14

## CERTIFICATE OF SERVICE

I certify that on February 20, 2026, a true copy of the foregoing Plaintiff Mighty Earth to Defendant JBS's Motion to Dismiss was filed through D.C. Superior Court's eFileDC, which electronically serves all counsel of record.


*/s/ Kim E. Richman*
Kim E. Richman

15