UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

MIGHTY EARTH,

        Plaintiff,

    v.

JBS USA FOOD COMPANY AND
JBS USA FOOD COMPANY HOLDINGS,

        Defendants.

Civil No. 1:25-cv-04138-JDB

ORAL ARGUMENT REQUESTED

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF DEFENDANTS' CROSS-MOTION TO DISMISS**

**TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

I.    MIGHTY EARTH CANNOT ESCAPE ARTICLE III STANDING REQUIREMENTS THAT CONGRESS HAS IMPOSED ON D.C. COURTS. .................3

    A.    The Enabling Statute Limits D.C. Courts To Hearing "Cases or Controversies." ..................................................................................................3

    B.    Each of Mighty Earth's Arguments Fails. ............................................................5

II.    MIGHTY EARTH OFFERS NO ANSWER TO D.C. CIRCUIT PRECEDENT REQUIRING DISMISSAL UNDER THESE CIRCUMSTANCES. ..................................8

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

                                                                  **Page**

**Cases**

*Alston v. Flagstar Bank, F.S.B.*,
  2014 WL 12803918 (D.D.C. Apr. 10, 2014) ................................................................. 6

\**Animal Legal Def. Fund v. Hormel Foods Corp.*,
  258 A.3d 174 (D.C. 2021) ............................................................................................ 5

*Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't*,
  533 F.3d 1183 (10th Cir. 2008) .................................................................................... 9

*Community Credit Union Servs., Inc. v. Federal Express Servs. Corp.*,
  534 A.2d 331 (D.C. 1987) ............................................................................................ 4

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ...................................................................................................... 9

*Fisher v. Gov't Emps. Ins. Co.*,
  762 A.2d 35 (D.C. 2000) .............................................................................................. 7

*Friends of Tilden Park, Inc. v. D.C.*,
  806 A.2d 1201 (D.C. 2002) .......................................................................................... 4

\**Grayson v. AT & T Corp.*,
  15 A.3d 219 (D.C. 2011) ................................................................................ 2, 4, 5, 6

\**Hammer v. United States*,
  989 F.3d 1 (D.C. Cir. 2021) ...................................................................................... 2, 8

*Hoyte v. Yum! Brands, Inc.*,
  489 F. Supp. 2d 24 (D.D.C. 2007) ................................................................................ 9

*Hussein v. Maait*,
  129 F.4th 99 (2d Cir. 2025) .......................................................................................... 9

*Morissette v. United States*,
  342 U.S. 246 (1952) ...................................................................................................... 3

*Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co.*,
  LLC, 757 F. Supp. 3d 59 (D.D.C. 2024) ................................................................ 9, 10

*Speyer v. Barry*,
  588 A.2d 1147 (D.C. 1991) .......................................................................................... 4

*Toghill v. Clarke*,
   877 F.3d 547 (4th Cir. 2017) ................................................................................................8

*United States v. Alford*,
   89 F.4th 943 (D.C. Cir. 2024) ...............................................................................................3

*Williams v. Purdue Pharma Co.*,
   297 F. Supp. 2d 171 (D.D.C. 2003) ......................................................................................9

## Statutes

28 U.S.C. § 1447(c) ..................................................................................................................8, 9

D.C. Code § 1-204.31 ....................................................................................................................5

D.C. Code § 1-206.02(a)(4) ......................................................................................................3, 6

D.C. Code § 11-705(b)..............................................................................................................3, 4

D.C. Code § 16–705(b) .................................................................................................................7

D.C. Code § 28-3901(a)(15) .........................................................................................................8

D.C. Code § 28-3905 ....................................................................................................................8

Enabling Statute .............................................................................................2, 3, 4, 5, 7, 10

Home Rule Act ...............................................................................................2, 3, 5, 6, 7, 10

Legislative History of D.C. Self-Government & Governmental Reorganization
   Act S. 1435 (Public Law 93-198) .........................................................................................6

## PRELIMINARY STATEMENT[1]

Unlike most cases involving disputes over federal removal jurisdiction, the United States Congress ultimately controls the prescribed bounds of jurisdiction in this case—for the courts of the District of Columbia no less than this Court. What is more, Congress has laid down clear statutory commands that, once faithfully construed and followed, establish that the jurisdiction of D.C. Courts ends where this Court's ends. Accordingly, this is not a circumstance where a diversity case that is otherwise subject to removal cannot be heard in federal court due to a jurisdictional defect unique to federal court, while a State elects to take a more expansive, forgiving approach to its own courts' jurisdiction. Rather, the same jurisdictional defect that necessitates dismissal by this Court should correspondingly necessitate a total dismissal, by virtue of Congressional statutes. That much is readily established, and Mighty Earth offers no meaningful (much less satisfying) answer. By all indications, Mighty Earth's hope is that this Court will, by ordering a "remand" to D.C. Courts from which Congress has withheld jurisdiction, facilitate an end run around jurisdictional limits set by Congress. This Court should not indulge that hope. Only by ordering a dismissal will this Court vindicate Congress's intent and abide by common jurisdictional limitations.

For the most part, Mighty Earth tries to elide the reality that D.C. Courts are ultimately creatures of Congress, whose jurisdiction extends no further than Congress permits. Yet there is no denying that Congress was perfectly within its rights to confine D.C. Courts to the limits of Article III "cases and controversies." In this key respect, D.C. Courts are situated differently from state courts: The rules for assessing standing need not and should not vary between removal and

---

[1] Capitalized terms not defined herein shall have the same meanings as those defined in JBS USA's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Remand and in Support of Defendants' Cross-Motion to Dismiss, Dkt. 20.

1

remand unless and until Congress authorizes such deviation. In other words, the anomaly that is an accepted incident of federalism—whereby States may authorize their courts to adjudicate legal disputes that are impervious to federal courts' adjudication under Article III, thereby creating a loophole in diversity jurisdiction and defendants' resort to removal—is here up to the will of Congress. To justify dismissal at this stage, it suffices to note that Congress has withheld any supposed jurisdiction for the D.C. Courts, invoking the latest word from the D.C. Council, to adjudicate what is concededly *not* an actual "case or controversy" within the meaning of Article III.

Federal statutes dictate this conclusion. *First*, the Enabling Statute vests D.C. Courts with authority specifically to hear "cases and controversies"—using the telltale, freighted terms of Article III. By using that constitutional term of art, Congress conveyed its intent to hold D.C. Courts to the principles and precedents attending Article III. Notably, the D.C. Court of Appeals recognized as much for decades predating *Hormel*, repeatedly treating federal standing doctrine as a jurisdictional constraint, stemming from the Enabling Statute. *See Grayson v. AT & T Corp.*, 15 A.3d 219, 235 n.38 (D.C. 2011) (*en banc*). *Second*, because the Home Rule Act separately prohibits the D.C. Council from enacting any measure "with respect to" the jurisdiction of D.C. Courts, the D.C. Council's amendments to the CPPA in 2012 were incapable of conjuring jurisdiction that was otherwise nonexistent, as all parties agree.[2]

To the extent the D.C. Court of Appeals has veered astray from Congressional commands in *Hormel*, this Court should not become complicit in that error. Instead, it should stay true to jurisdictional limitations by dismissing this case. *See Hammer v. United States*, 989 F.3d 1, 2 (D.C. Cir. 2021).

---

[2] To avoid any sur-reply, JBS USA herein argues only in support of its motion to dismiss.

2

**ARGUMENT**

I. **MIGHTY EARTH CANNOT ESCAPE ARTICLE III STANDING REQUIREMENTS THAT CONGRESS HAS IMPOSED ON D.C. COURTS.**

Mighty Earth's argument that D.C. Courts are free from Article III standing requirements boils down to a question of federal statutory construction. Two federal statutes, the Enabling Statute and the Home Rule Act, expressly refute Mighty Earth's argument.

A. **The Enabling Statute Limits D.C. Courts To Hearing "Cases or Controversies."**

The D.C. Superior Court is barred by federal statute from exercising jurisdiction over a case in which the plaintiff lacks Article III standing. *See* Dkt. 20 ("MTD") at 3-4. In arguing otherwise, Mighty Earth misapprehends the law on how Article III applies to D.C. Courts.

In the Enabling Statute, Congress authorized the D.C. Superior Court to hear "[c]ases and controversies." D.C. Code § 11-705(b). By referencing "cases and controversies," a constitutional term of art, Congress conveyed its intent that the Enabling Statute would correspond with Article III of the Constitution. It follows from straightforward principles of statutory construction that D.C. Courts lack the power to hear matters where the plaintiff lacks Article III standing. *See, e.g.*, *United States v. Alford*, 89 F.4th 943, 952 (D.C. Cir. 2024) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word.") (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)). Furthermore, the Home Rule Act prohibits the D.C. Council from "enact[ing] any act, resolution, or rule with respect to any provision . . . relating to organization and jurisdiction of the District of Columbia courts." D.C. Code § 1-206.02(a)(4). Because of these limitations in the Enabling Statute and the Home Rule Act, the 2012 amendments to the CPPA (the "2012 CPPA Amendments") were incapable of

3

authorizing plaintiffs who lack Article III standing to sue in D.C. Superior Court.  *See generally* MTD at 5-6.

Mighty Earth does not contest that the Enabling Statute contains a "cases or controversy" requirement or that this phrase has the same meaning as it does in Article III of the Constitution.[3] Nonetheless, it contends that "D.C. courts are Article I courts that have **never** been bound by Article III standing restrictions." Dkts. 22, 23 ("Opp.") at 11 (emphasis partly removed).  But that contention ignores the role that Congress has rightfully played by importing the constitutional rubric into its statutory command.  As a result, the D.C. Court of Appeals repeatedly held, pre-*Hormel*, that D.C. Courts are limited to "cases and controversies" by virtue of the Enabling Statute:

> Congress did not establish [D.C. Courts] under Article III of the Constitution, but ***we nonetheless apply in every case "the 'constitutional' requirement of a 'case or controversy'*** and the 'prudential' prerequisites of standing." *Speyer v. Barry*, 588 A.2d 1147, 1160 (D.C. 1991); *see also* D.C. Code § 11–705(b) (2001) (stating that divisions of this court hear and determine "cases and controversies").  In ***enforcing these requirements***, we "'look to' federal standing jurisprudence, [both] constitutional and prudential." *Speyer*, 588 A.2d at 1160 (summarizing *Community Credit Union Servs., Inc. v. Federal Express Servs. Corp.*, 534 A.2d 331, 333 (D.C. 1987)).

*Friends of Tilden Park, Inc. v. D.C.*, 806 A.2d 1201, 1206 (D.C. 2002) (emphasis added); *see also Grayson*, 15 A.3d at 235 n.38 (D.C. 2011) (*en banc*) ("[W]e have said since the creation of the current District of Columbia court system that we will follow the federal constitutional standing requirement."); *Speyer*, 588 A.2d at 1160 ("In order to reach the merits, ***the Georgetown residents must satisfy*** both ***the 'constitutional' requirement of a 'case or controversy'*** and the 'prudential' prerequisites of standing.") (emphasis added).

---

[3]  To quote Mighty Earth, "D.C. Code § 11-705(b), merely provides that '[c]ases and controversies' shall be heard and determined by divisions of the court." Opp. at 13.

4

Even in *Hormel*, the D.C. Court of Appeals had to acknowledge that the 2012 CPPA Amendments modified longstanding jurisprudence, holding that "the CPPA conveys a clear legislative intent to **modify** Article III's strictures." *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 179 (D.C. 2021) (emphasis added).  If D.C. Courts were never bound by Article III in the first place, as Mighty Earth contends, then the 2012 CPPA Amendments would not have been "modify[ing] Article III's strictures." *See id.*  Despite acknowledging that the 2012 CPPA Amendments modified the limitations on the jurisdiction of the D.C. Courts, the *Hormel* court did not account for how Congress, in both the Home Rule Act and Enabling Statute, had statutorily foreclosed such modification.

B.     **Each of Mighty Earth's Arguments Fails.**

It is no answer for Mighty Earth to observe, as it does, that the D.C. Superior Court is an Article I court to which Article III does not inherently apply.  Although that is true as a constitutional matter, it becomes irrelevant the moment that Congress enacted a statute that holds D.C. Courts to the limits of Article III cases or controversies, or that disempowers the D.C. Council from expanding the jurisdiction of those courts beyond the limits of Article III cases or controversies.  Nor is this election by Congress any surprise.  As JBS USA has noted and Mighty Earth does not deny, Congress regularly limits Article I courts' jurisdiction to cases or controversies.  MTD at 4 n.2.  And Mighty Earth does not identify any language in the Enabling Statute suggesting that Congress intended to depart from this settled practice for D.C. Courts. *Cf. Grayson*, 15 A.3d at 243-44 ("Elimination of our constitutional standing requirement would be so unusual that we will not lightly infer such intent on the part of the Council.").

When it comes to statutory prescription from Congress, Mighty Earth has little to offer. All it can and does cite in this regard, Opp. at 12, is D.C. Code § 1-204.31, which gives the D.C. Courts "jurisdiction over any other matters granted to [them] … by other provisions of law," to

5

which it points to the 2012 CPPA Amendments as such a law granting jurisdiction. But that does not plausibly suggest a Congressional intent to authorize jettisoning the case-or-controversy requirement for purposes of threshold standing. Nor can the argument possibly overcome the Home Rule Act, whereby Congress expressly prohibited the D.C. Council from enacting "any" statute "with respect to" the "jurisdiction of the District of Columbia courts." D.C. Code § 1-206.02(a)(4).[4] Plaintiff's contention that "the [2012] CPPA [Amendments do] not change the organization or jurisdiction of D.C. courts" is wrong for two reasons. *First*, D.C. Courts expressly held the opposite, recognizing that they were, in practice, bound by Article III standing requirements before the 2012 CPPA Amendments were enacted. *See, e.g.*, *Grayson*, 15 A.3d at n.38 (D.C. 2011) ("[W]e have said since the creation of the current District of Columbia court system that we will follow the federal constitutional standing requirement."); *Alston v. Flagstar Bank, F.S.B.*, 2014 WL 12803918, at *2 (D.D.C. Apr. 10, 2014) ("[T]here is simply no material difference between the federal standard of standing and the D.C. standard"). *Second*, the Home Rule Statute broadly bars the D.C. Council from enacting any statute "***with respect to***" jurisdiction, not just statutes ***changing*** jurisdiction. D.C. Code § 1-206.02(a)(4) (emphasis added).

By acknowledging that the CPPA is a law that purports to grant D.C. Courts "jurisdiction" over its case even where such jurisdiction did not otherwise exist, Mighty Earth is conceding, in substance, that the 2012 CPPA Amendments are expressly precluded by the Home Rule Act.

---

[4] An earlier version of the Home Rule Act would have allowed the D.C. Council "to reorganize and even change the jurisdiction of the D.C. courts 18 months after it took office." H.R. Rep. No. 93-482, at 128 (1973), *reprinted in* LEGISLATIVE HISTORY OF D.C. SELF-GOV'T & GOVERNMENTAL REORGANIZATION ACT, S. 1435 (PUBLIC LAW 93-198), at 1125 (1974). Because this was "highly objectionable to the local judiciary," *id.*, it was omitted, leaving intact the language that survives today prohibiting the D.C. Council from "enact[ing] any act, resolution, or rule with respect to any provision . . . relating to organization and jurisdiction of the District of Columbia courts." D.C. Code § 1-206.02(a)(4).

Opp. at 12.  Indeed, Mighty Earth concedes that, absent the 2012 CPPA Amendments, the D.C. Courts would lack subject-matter jurisdiction, even setting aside the "case or controversy" limitation in the Enabling Statute.  *Id.*  These two concessions are dispositive.

Nor is there any merit to Mighty Earth's insistence that the Enabling Statute does not say that "D.C. courts may hear *only*" cases or controversies.  Opp. at 13 (emphasis added).  It is equally true that the relevant parts of Article III of the Constitution do not use the word "only."  Nevertheless, the U.S. Supreme Court has always understood that Article III limits jurisdiction to "cases or controversies."  Likewise, the D.C. Courts had repeatedly understood before *Hormel* that the Enabling Statute limits jurisdiction to "cases or controversies":

> Although this court, as an Article I court, is not bound by 'case or controversy' requirements based on Article III of the Constitution, ***we are limited by our own governing statute to deciding 'cases and controversies.'***  D.C. Code § 16–705(b) (1995).  Accordingly, we look to federal case law to help us identify the cases and controversies that we may properly consider.

*Fisher v. Gov't Emps. Ins. Co.*, 762 A.2d 35, 38 n.7 (D.C. 2000) (emphasis added) (internal citations omitted).  As such, Mighty Earth is wrong when it states that "*Fisher* expressly states that 'this court … is not bound by 'case or controversy'' limitations."  Opp. at 13 (quoting *Fisher*, 762 A.2d at 38 n.7).  Mighty Earth's argument that the statute *Fisher* cited, D.C. Code § 16-705(b), does not use the phrase "cases or controversies," Opp. at 13, is also unavailing because that statute does use the word "case".

Similarly, Mighty Earth's claim that *Hormel* and its progeny have foreclosed this issue is unavailing.  Opp. at 10-11 (citing cases).  None of these cases discussed the Enabling Statute or Home Rule Act.  *See* MTD at 5-6.  And *Hormel*, the first case to suggest that D.C. Courts are exempt from Article III requirements, relies on examples where *state* courts have modified their own standing requirements.  Again, D.C. Courts differ categorically because they are federal

7

creatures, bound by federal statutes, untouched by any federalism concerns. MTD at 6. Mighty Earth has no response to these points.

Mighty Earth suggests in a footnote that this Court lacks the power, even in light of on-point federal law, to render any decision that interprets the CPPA. *See* Opp. at 10 n.3 (arguing that "federal courts are without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent.") (quoting *Toghill v. Clarke*, 877 F.3d 547, 556 (4th Cir. 2017)). But this overlooks that the CPPA is not a state statute, but rather, a law passed by the D.C. Council, a legislative body subservient to Congress and federal statutes. In any event, JBS USA is not asking this Court to interpret the CPPA, but instead, to find that any excess jurisdiction supposedly resulting from the 2012 CPPA Amendments would be foreclosed by *federal* statutes.

Finally, Mighty Earth's new arguments as to why it has statutory standing are irrelevant. Opp. at 13-14. This Court need not resolve whether Mighty Earth has statutory standing because Mighty Earth's lack of Article III standing ends this Court's inquiry and necessitates dismissal.[5]

## II. MIGHTY EARTH OFFERS NO ANSWER TO D.C. CIRCUIT PRECEDENT REQUIRING DISMISSAL UNDER THESE CIRCUMSTANCES.

Mighty Earth's argument that this Court must remand, rather than dismiss, Opp. at 3-5, ignores D.C. Circuit precedent holding that remand is inappropriate when federal law prohibits the transferee court from exercising jurisdiction. *Hammer v. United States*, 989 F.3d 1, 2 (D.C. Cir. 2021). Although 28 U.S.C. § 1447(c) provides that a district court "shall" remand a case if it lacks subject-matter jurisdiction, the D.C. Circuit held that "§ 1447(c) does not require

---

[5] In any event, Mighty Earth is not a "public interest organization" as defined by the CPPA; it has failed to identify "a consumer or a class of consumers" that could bring suit in their own right"; and it has failed to allege a "sufficient nexus" to the interests of the D.C. consumers it purports to represent. *See* D.C. Code §§ 28-3901(a)(15), 28-3905.

the District Court to remand" where remand would frustrate federal statutory policy. *Id.* JBS USA also cited several other cases in which courts have dismissed rather than remanded removed cases. MTD at 7-8.[6]

Mighty Earth does not rebut this showing, let alone try to distinguish these authorities. Nor does it explain why it would be proper for an Article III court finding an absence of Article III jurisdiction to remand, and in doing so, enable the exercise of judicial power by a court that is bound by precisely the same jurisdictional constraints as the Article III court according to Congress. JBS USA's cited cases refute Mighty Earth's claim that remand is necessary whenever the "case could never have been brought in federal court." Opp. at 4 (emphasis removed). No such categorical rule can be reconciled with *Hammer*.

The ***only*** argument Mighty Earth makes in its Opposition is that "[r]emand is the [d]efault remedy" when a court lacks subject matter jurisdiction, but this is non-responsive. *See* Opp. at 3-5. No one disagrees that this is the ***default*** rule. Rather, the question is whether that default rule gives way to an exception specifically when federal law bars the transferee court from exercising jurisdiction. Mighty Earth's cases are inapposite because none grapple with this novel circumstance. *See* Opp. at 3-5.

In *Gemini*, for example, this Court held that remand is the default remedy when a federal court lacks subject matter jurisdiction over a removed case. *Nat'l Ass'n of Consumer Advocs. v.*

---

[6] *See Hussein v. Maait*, 129 F.4th 99, 123 (2d Cir. 2025) (affirming dismissal of removed action against sovereign due to lack of subject matter jurisdiction); *Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1192 (10th Cir. 2008) (Gorsuch, J.) (same); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 354 (2006) (remanding with instructions to dismiss removed case for lack of standing, not to remand back to state court); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 29 (D.D.C. 2007) (dismissing removed CPPA case because plaintiff lacked necessary injury-in-fact to establish standing); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 178 (D.D.C. 2003) (same).

*Gemini Tr. Co.*, LLC, 757 F. Supp. 3d 59, 61 (D.D.C. 2024). However, in that case, the defendant did not argue that federal law prohibits the D.C. Superior Court from exercising jurisdiction. Here, JBS USA argues that the Enabling Statute and Home Rule Act bar the D.C. Superior Court from exercising jurisdiction over this action. *See* Section I, *supra*. Remanding would simply transfer the case to a court that is equally powerless to hear it. That is precisely the circumstance *Hammer* addressed, and Mighty Earth offers no distinction relative to it.

Finally, Mighty Earth fails to address JBS USA's observation that, absent dismissal, there would be no realistic check by an Article III court on the D.C. Council's unlawful modification of D.C. Superior Court jurisdiction. *See* MTD at 8. By contrast, dismissal would allow federal courts (this Court and the D.C. Circuit) to remedy a jarring departure from longstanding statutory prescription and a worrisome anomaly in how jurisdiction is being construed when high-stakes diversity cases under the CPPA are removed from D.C. Superior Court.

## CONCLUSION

For the foregoing reasons, Mighty Earth's motion to remand should be denied and this action should be dismissed for lack of jurisdiction. In the alternative, to the extent this Court is inclined to remand this action, JBS USA respectfully requests that it direct the D.C. Superior Court to dismiss this action for lack of jurisdiction.

DATED: March 6, 2026                    Respectfully submitted,

                                                        QUINN EMANUEL URQUHART &
                                                        SULLIVAN, LLP

                                        By:  */s/ Manisha M. Sheth*
                                                  Manisha M. Sheth

                                                  Manisha M. Sheth (*pro hac vice*)
                                                  295 Fifth Avenue
                                                  New York, NY 10016
                                                  (212) 849-7000
                                                  manishasheth@quinnemanuel.com

                                                  Derek L. Shaffer D.C. Bar. No. 478775
                                                  1300 I Street NW, Suite 900
                                                  Washington, DC 20005
                                                  (202) 538-8000
                                                  derekshaffer@quinnemanuel.com

                                                  Alex H. Loomis D.C. Bar. No. MA0049
                                                  111 Huntington Ave, Suite 520
                                                  Boston, MA 02199
                                                  (617) 712-7100
                                                  alexloomis@quinnemanuel.com

                                                  *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 6, 2026, a notice of the foregoing pleading was provided via the CM/ECF system to the counsel of record.

DATED:  March 6, 2026.

/s/ *Manisha M. Sheth*
Manisha M. Sheth
