UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIGHTY EARTH,<br><br>     Plaintiff,<br><br><br>          v.<br><br><br>JBS USA FOOD COMPANY and<br>JBS USA FOOD COMPANY HOLDINGS,<br><br>     Defendants. | Civ. A. No. 25-4138 (JDB) |

## MEMORANDUM OPINION & ORDER

Disputes over Article III standing are common.  Typically, the parties disagree over whether the plaintiff has standing and, accordingly, whether federal court jurisdiction is proper.  But this case—a removal action from D.C. Superior Court—presents the rare circumstance where both parties agree that the plaintiff has no standing and that this court lacks jurisdiction.  The only point of contention remaining is whether, lacking jurisdiction, this Court should remand the case to Superior Court or dismiss the action altogether.  For the reasons set forth below, remand is appropriate.

## BACKGROUND

Mighty Earth is a non-profit organization dedicated to protecting the "environment, animals, and consumers."  Compl. [ECF No. 1-1] ¶ 27.  It sued JBS USA Food Company and JBS USA Food Company Holdings (collectively, "JBS"), the world's largest meat processor, for making false and misleading statements about its products.  Id. at 1.  Specifically, Mighty Earth contends that JBS misrepresented the environmental sustainability of their meat to consumers by,

for example, advertising a goal of achieving net zero emissions by 2040 without the intention or capability of doing so.  Id.  Mighty Earth argues that these lofty environmental claims mislead consumers who prefer environmentally friendly products and pay a premium for them.  Id. ¶¶ 81-90.

This suit arises under the D.C. Consumer Protection Procedures Act (CPPA).  See D.C. Code §§ 28-3901–28-3913.  The Act provides an "extensive regulatory framework" to address improper trade practices.  See Osbourne v. Capital City Mortg. Corp., 727 A.2d 322, 325 (D.C. 1999).  Its purpose is to "establish[] an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia."  See D.C. Code § 28-3901(c).  To that effect, the Act prohibits corporations from making false or misleading statements or omissions about their products to consumers.  See id. § 28-3904(a).

Notably, the CPPA creates a cause of action for public interest organizations to sue on behalf of the public.  The Act authorizes organizations to bring representative suits based on "the interests of . . . a class of consumers" to "seek[] relief from the use by any person of" an unlawful trade practice, provided "the consumer or class could bring an action" under the statute, and the organization has a "sufficient nexus to the interests involved of the . . . class to adequately represent those interests."  Id. § 28-3905(k)(1)(D).  That provision allows an organization to sue "without regard to whether it also satisfies traditional Article III standing requirements."  Ctr. for Inquiry Inc. v. Walmart, Inc., 283 A.3d 109, 116 n.4 (D.C. 2022) (quotation omitted).  Put another way, the Act allows public interest organizations who are not themselves injured by unfair trade practices to vindicate the rights of consumers who are.

2

Mighty Earth brought this case in D.C. Superior Court under the CPPA's public interest organization cause of action "on behalf of the affected consumers and the general public of the District of Columbia." Compl ¶ 97. It claims to "stand in the shoes of [the] consumer" to seek relief from the alleged violations. Id. ¶ 98. Mighty Earth does not claim that it is itself injured or that its members are injured by JBS's actions.

JBS removed the case to this Court, asserting diversity jurisdiction. In its notice of removal, JBS argues a complete diversity of citizenship exists because Mighty Earth is a citizen of the District of Columbia while Defendants are citizens of Delaware and Colorado. JBS also contends that the amount in controversy requirement is met because disgorgement, injunctive relief, and attorney fees all independently exceed $75,000.

Soon after, Mighty Earth moved to remand for lack of jurisdiction. After full briefing, the motion is ripe.

## **LEGAL BACKGROUND**

Article III standing ensures that plaintiffs have a personal stake in their litigation. See Diamond Alt. Energy, LLC v. EPA, 60 U.S. 100, 110 (2025). This is necessary because Article III limits the jurisdiction of federal courts to "Cases" or "Controversies"—genuine disputes between affected parties. Art. III, § 2, cl. 1. To demonstrate standing, a plaintiff must show (1) an injury in fact (2) caused by the defendant that is (3) redressable by the relief requested. See id. Here, there is no question that causation and redressability are satisfied. The issue is whether Mighty Earth has suffered an injury in fact.

To demonstrate an injury in fact, the plaintiff must show a harm to a legally protected interest that is "concrete and particularized." Kansas Corp. Comm'n v. FERC, 881 F.3d 924, 929 (D.C. Cir. 2018) (quotation omitted). For an injury to be "concrete," a plaintiff must have suffered

a harm that has a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." TransUnion LLC v. Ramirez, 594 U.S. 413, 424 (2021) (citation modified). Courts must therefore consider whether the plaintiff has been injured in a manner that resembles harms found in traditional legal claims, such as those that arise under tort, contract, or property law. Id. at 417. This requirement prevents federal courts from "adjudicat[ing] hypothetical or abstract disputes." Id. at 423.

## ANALYSIS

The party invoking federal jurisdiction bears the burden of establishing the court's authority to hear the case. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). Ordinarily, this is the plaintiff, but in removal actions, it is the defendant. See Nat'l Ass'n of Consumer Advocs. v. Gemini Tr., 757 F. Supp. 3d 59, 61 (D.D.C. 2024) (explaining that in removal cases, the plaintiff "assumes the somewhat odd posture of disclaiming its own [Article III] standing"); see also 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). It thus falls to JBS to show that Mighty Earth has Article III standing.

But JBS does not argue that Mighty Earth has standing. Quite the opposite: it agrees that Mighty Earth lacks standing because it has not suffered an injury in fact.[1] Instead, JBS contends that Mighty Earth not only lacks standing in this Court, but also in the D.C. courts, so dismissal— not remand—is required here. In JBS's telling, this is so because the D.C. Court of Appeals has erroneously interpreted the District of Columbia Court Reorganization Act of 1970 to allow the

---

[1] For its part, Mighty Earth does not argue that it has suffered an injury in fact either. In the motion to remand, it attests that it brings its claim as a public interest organization on behalf of D.C. consumers, not in its private capacity as a purchaser of goods and services.

D.C. Courts to hear suits that do not qualify as "cases" or "controversies" under the Constitution. See Animal Legal Def. Fund v. Hormel Foods Corp., 258 A.3d 174, 182-85 (D.C. 2021)

To be sure, the Reorganization Act grants D.C. courts the authority to hear "cases and controversies," D.C. Code § 11-705(b), which is similar to Article III's language limiting federal court jurisdiction to "cases" or "controversies." And D.C. courts have traditionally viewed § 11-705(b) to track the requirements of the federal constitution. See Fisher v. Gov't Emps. Ins. Co., 762 A.2d 35, 38 n.7 (D.C. 2000). Nevertheless, the D.C. Court of Appeals has interpreted any similarity between the federal constitution and § 11-705(b) as "prudential," not mandatory. Fraternal Ord. of Police v. District of Columbia, 113 A.3d 195, 199 (D.C. 2015). Thus, that court has held that standing in the D.C. courts can be modified by the D.C. Council through laws that demonstrate an intent to displace traditional Article III standing requirements. See id.; Hormel, 258 A.3d at 182-85; see also Grayson v. AT&T Corp., 15 A.3d 219, 259 (D.C. 2011) (Ruiz, J., concurring in part and dissenting in part).

In 2012, the Council passed D.C. Code § 28-3905(k)(1)(D), the provision Mighty Earth invokes here. See Hormel, 258 A.3d at 182-85. That provision allows public interest organizations to sue on behalf of "the interests of a consumer or a class of consumers." Id. at 179 (citation modified). Public interest organizations may stand in the shoes of D.C. consumers provided they have a "sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." D.C. Code § 28-3905(k)(1)(D)(ii).

In Hormel, the D.C. Court of Appeals determined that the 2012 amendment of the Consumer Protection Procedures Act overrode the District's default standing requirements. 258 A.3d at 183-85. It held that the "nexus" requirement would be "pointless if it incorporated Article III's restrictions" because public interest organizations could already sue on behalf of themselves

or their members under a separate statutory provision. Id. at 183. Reasoning that the D.C. Council would not pass a superfluous cause of action, the court determined that § 28-3905(k)(1)(D) "reveal[ed] the Council's intent to modify traditional Article III standing requirements" with the nexus test. Id. In sum, under Hormel, D.C. courts have jurisdiction to hear claims under § 28-3905(k)(1)(D) even if the plaintiffs lack Article III standing.

At bottom, JBS's argument is that Hormel was wrong. It maintains that the Reorganization Act ties D.C. courts to the Article III standard—making the injury-in-fact requirement mandatory, not merely prudential—and that the D.C. Council is not free to disregard those limits. JBS wants this Court to review the Reorganization Act de novo and conclude that it mandates Article III standing in the D.C. courts.

But JBS's request is squarely foreclosed by D.C. Circuit precedent holding that, "in diversity cases," district courts are bound by "[p]rinciples of federalism" to "follow the District of Columbia Court of Appeals' interpretation of the District of Columbia jurisdictional statute." Gatewood v. Fiat, S.p.A., 617 F.2d 820, 824 (D.C. Cir. 1980); see also Hall v. C & P Tel. Co., 793 F.2d 1354, 1357-58 (D.C. Cir. 1986). The law at issue in Gatewood was a chapter of the Reorganization Act that dealt with personal jurisdiction, D.C. Code § 13-423, while the law at issue here is a chapter that deals with the assignment of "judges, divisions, and hearings." Id. § 11-705. There is no basis for distinguishing the provisions based on the "principles of federalism" that must guide this Court's review—indeed, both were enacted as part of the 1970 Reorganization Act. Gatewood, 617 F.2d at 824. Accordingly, the D.C. Court of Appeals is the final authority (aside from the U.S. Supreme Court) on the interpretation of § 11-705.

And the D.C. Court of Appeals has already spoken on this issue. In Hormel and other cases, that court has squarely held that D.C.'s standing requirements are prudential, not mandatory.

See 258 A.3d at 181; Fraternal Ord. of Police, 113 A.3d at 199.  Several cases have situated the prudential nature of standing in D.C. courts in the text and structure of the 1970 Reorganization Act.  See Grayson, 15 A.3d at 259-63; Hormel, 258 A.3d at 181 (citing Grayson, 15 A.3d at 259). And of course, Hormel holds that Article III standing is unnecessary in the specific context of claims brought under § 28-3905(k)(1)(D) in Superior Court.  This Court is thus bound by those rulings, which collectively foreclose JBS's argument that the Reorganization Act mandates the Article III "cases" or "controversies" requirement.

The only question remaining is whether Mighty Earth has Article III standing.  The answer is no.  Neither side claims that Mighty Earth itself has suffered an injury in fact.  And Mighty Earth's complaint makes it clear that it brings this case in its capacity as a public interest organization on behalf of D.C. consumers.  It expressly disclaims the notion that it has been harmed by JBS in its private capacity, and nothing in the record suggests otherwise.  Therefore, it has not suffered an injury in fact and lacks Article III standing.

This Court cannot exercise jurisdiction over Mighty Earth's claims.  In light of binding decisions of the D.C. Court of Appeals, the D.C. Superior Court can.  Accordingly, this Court remands Mighty Earth's action to D.C. Superior Court.

* * *

Upon consideration of [16] Mighty Earth's motion to remand, [19] JBS's cross-motion to dismiss, and the entire record herein, it is hereby **ORDERED** that the motion to remand is **GRANTED** and the cross-motion to dismiss is **DENIED.**  It is further **ORDERED** that [15] a duplicate of Mighty Earth's motion to remand is **DENIED** as moot.

/s/
_____

JOHN D. BATES
United States District Judge

Dated: <u>March 16, 2026</u>